UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, et al.<br><br>       Plaintiffs,<br><br>   -against-<br><br>HARVEY WEINSTEIN,<br><br>       Defendant. | 1:18-cv-02526-PAC (RWLx)<br><br>**DEFENDANT HARVEY WEINSTEIN'S THIRD-PARTY COMPLAINT FOR BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING (BAD FAITH)** |
| HARVEY WEINSTEIN,<br><br>       Counterclaimant,<br><br>   -against-<br><br>FEDERAL INSURANCE COMPANY, CHUBB INDEMNITY INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, PACIFIC INDEMNITY INSURANCE COMPANY GREAT NORTHERN INSURANCE COMPANY, and DOES 1-10, inclusive<br><br>       Counter-defendants. | |
| HARVEY WEINSTEIN,<br><br>       Third-Party Plaintiff,<br><br>   -against-<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and ROES 1-10, inclusive,<br><br>       Third-Party Defendants. | |

  Defendant Harvey Weinstein brings this Third-Party Complaint against Third-Party Defendant National Union Fire Insurance Company of Pittsburgh, PA and ROES 1-10, inclusive ("National Union"). In such capacity, Defendant Weinstein alleges as follows:

**INTRODUCTION**

This third-party action is a direct response to National Union's unwarranted efforts to evade its coverage responsibilities.  As the corporate insurer of The Weinstein Company ("TWC") providing both employment practices liability (EPL) and directors and officers (D&O) coverage, National Union owed direct responsibilities to its past and present officers and directors, including TWC's (former) co-founder and chairman, Harvey Weinstein.  Like the Chubb Insurers who turned their backs on Mr. Weinstein, National Union engaged in a systemic effort to dodge its coverage obligations through a series of delays, deceptions, and outright misrepresentations.  After receipt of Mr. Weinstein's initial claim notices, National Union stood mute for weeks.  When Mr. Weinstein demanded a response, National Union stalled . . and stalled . . . and stalled.  And when the insurer *finally* deigned to respond to Mr. Weinstein's pleas for a decision, National Union disclaimed coverage by disingenuously hiding behind answers given in an insurance application TWC completed *more than a decade before* any plaintiffs asserted claims against Mr. Weinstein.  According to the insurer, purported falsehoods made by TWC in 2005 preluded all coverage for claims in 2018!

But National Union's gamesmanship did not stop there.

To ensure no EPL coverage existed for Mr. Weinstein, National Union intentionally misconstrued, misapplied, and improperly expanded the policy's narrowly-defined, sexual abuse exclusion.  As for its D&O coverage, National Union did just the reverse.  Notwithstanding the policy's coverage for criminal investigations, National Union ignored widely-reported accounts of ongoing criminal investigations targeting Mr. Weinstein in London, in New York, and in California.  Whereas, the newspapers and magazines reporting these stories won Pulitzer prizes, National Union asserted it had no written proof that Mr. Weinstein faced any such criminal

exposure.  In National Union's self-interested world view, no criminal claims against Mr. Weinstein even existed.

Despite Mr. Weinstein's challenge to National Union's denial (pointing out its analytic flaws), the insurer refused to relent.  It rejected Mr. Weinstein's request for reconsideration, and it even refused to specify the law applicable to its obligations:  At first, National Union disclaimed any obligations under California law.  Then it embraced California law in its denial letter.  When asked to confirm its adherence to California legal principles, the insurer hedged and cited both New York law and California law its reply.  In subsequent communications, it reverted back to California law alone.  To be sure, National Union refuses to commit to a position.  In fact, the only constant here is National Union's deep and abiding hostility toward Mr. Weinstein.  Whatever Mr. Weinstein's request, National Union's (belated) answer is always "No."  National Union admits nothing.  It concedes nothing.  And won't even identify the law it is using to evaluate its obligations to Mr. Weinstein.  No, No, No.

Mr. Weinstein has been left in an untenable position, and his patience has run out.  By this Third-Party Complaint, he seeks to hold National Union accountable for its many wrongs.  Mr. Weinstein asks for this Court's assistance in forcing National Union to provide bargained-for policy benefits, and to pay other damages for its bad faith conduct.

## THE PARTIES

1. Third-Party Plaintiff Harvey Weinstein is a citizen of the State of Connecticut.  In 2005, Mr. Weinstein and his brother co-founded of The Weinstein Company ("TWC"), where Mr. Weinstein served as TWC's co-chairman and co-CEO until his termination in October 2017.

2.      Third-Party Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a Pennsylvania corporation, with its principal place of business located in New York, New York.[1]

3.      Mr. Weinstein does not know the true names and capacities, whether individual, associate, corporate or otherwise of Third-Party Defendants ROES 1 through 10, inclusive, and, therefore, he sues these ROE Third-Party Defendants by such fictitious names and will amend this Third-Party Complaint to show their true names and capacities when the same are ascertained.  Mr. Weinstein is informed and believes, and based thereupon alleges, that Third-Party ROES 1 through 10, inclusive, were in some manner responsible or legally liable for the events, actions, transactions, and circumstances alleged herein.

## JURISICTION AND VENUE

4.      Jurisdiction for this Third-Party Complaint is based on complete diversity of the parties, and because the amount in controversy set forth in this Third-Party Complaint exceeds $75,000, exclusive of costs.  See 28 U.S.C. § 1332.

5.      Venue for this Third-Party Complaint is proper because a substantial part of the events or omissions giving rise to Mr. Weinstein's claims against National Union occurred within the Southern District of New York.  See 28 U.S.C. § 1339(a)(2).

## GENERAL ALLEGATIONS

### *Harvey Weinstein and his Insurance Program*

6.      Harvey Weinstein is an internationally-known producer of such award-winning films as Shakespeare in Love, Pulp Fiction, and The King's Speech.  In 2005, Mr. Weinstein and

---

[1] For diversity purposes, National Union is properly classified with the Counter-Defendants, inasmuch as National Union (like the Chubb Insurers) has improperly denied coverage to Mr. Weinstein.

his brother co-founded The Weinstein Company ("TWC"), where Mr. Weinstein served as its co-chairman and co-CEO until his termination.

7.      Through insurance, Mr. Weinstein was protected against a variety of risks, including potential claims asserted against him in his capacity as a TWC director, officer, and/or employee, as well as potential employment-related violations.

8.      For the time period August 25, 2017 through August 25, 2018, insurance coverage for Mr. Weinstein was based upon National Union's PrivateEdge Plus Policy #01-824-40-28 ("National Union Policy") issued to TWC.  Reflecting a shared $10,000,000 limit for defense expenditures and indemnity payments, National Union's Policy provided TWC and its current and former executives (including Mr. Weinstein) with claims-made coverage structured viz:

(i)     *D&O Coverage / Criminal Coverage.*  By its terms, National Union's D&O coverage provided coverage to Mr. Weinstein for any "Wrongful Act" alleged in connection with a "Claim" asserted against him as a director, officer and/or employee of TWC.  The National Union Policy separately defined each such term.  The word "Claim," for example, was defined in the Policy to include criminal investigations of insured individuals, and the phrase "Wrongful Act" was broadly defined to mean "any breach of duty, neglect, error, misstatement, misleading statement, omission or act" by a corporate executive or employee "by reason of his . . . status" as an "Executive or Employee" of TWC.

(ii)    *EPL / Employment Coverage.*  The National Union Policy also insured Mr. Weinstein against any actual or alleged "Employment Practices Violation" or "Third Party Violation."  As defined in the Policy, an "Employment Practices Violation"

5

included more than 11 different categories of wrongs including, of relevance here, employment-related claims for harassment, misrepresentations, defamation or invasion of privacy, and violations of individuals' civil rights.  For its part, "Third Party Violation" was defined in the Policy to mean any actual or alleged "harassment . . . or . . . the violation of the civil rights of a person relating to such harassment" committed against anyone except insureds, applicants for employment, or outside entities.

Finally, National Union's Policy also included various exclusions – exclusions the insurer was required to affirmatively (and conclusively) prove with supporting facts *before* applying their terms to either limit or eliminate coverage owing to Mr. Weinstein.

9. In addition to the direct indemnification obligations owed to Mr. Weinstein as a former TWC executive, National Union's Policy was designed to provide Mr. Weinstein with resources to both defend and, if necessary, to indemnify, himself against liabilities alleged by way of legal actions, arbitrations or criminal investigations.  Per the terms of the National Union Policy, attorneys' fees and other defense expenditures reduced the insurer's overall $10,000,000 limit, *however*, the Policy explicitly provided that Mr. Weinstein's defense expenditures (like those of other individual TWC executives) were to be prioritized and paid before TWC's corporate expenses.  Moreover, the Policy stated that if National Union was called upon for coverage (as Mr. Weinstein did), the insurer was required to advance defense payments to Mr. Weinstein even before the resolution of any underlying claims.

**THE UNDERLYING LAWSUITS AND FORMAL DEMAND LETTERS**

10. On October 5, 2017, The New York Times ran a front page story, detailing a series of salacious accusations against Mr. Weinstein, "including sexual harassment and unwanted physical contact" targeting TWC employees, as well as current and aspiring actresses.

6

See J. Kantor & M. Twohey, "*Harvey Weinstein Paid Off Sexual Several Accusers for Decades*," The New York Times, Oct. 5 2017.  Several days later, newyorker.com posted similar allegations, in a digital version of a forthcoming magazine story by Ronan Farrow, "*From Aggressive Overtures to Sexual Assault:  Harvey Weinstein's Accusers Tell Their Stories*." The NewYorker, Oct. 23, 2017.

11.	Overnight, Mr. Weinstein became a pariah.  His denials of liability became mere background noise, lost in the international uproar that followed.

12.	Within hours of The New York Times story, Mr. Weinstein was fired from his post as co-chairman and co-CEO of TWC.  For its part, Hollywood quickly turned its back on Mr. Weinstein.  On October 14, 2017, Mr. Weinstein was expelled from the Motion Picture Academy of Arts and Sciences, and the entertainment industry's leading trade publication, Variety, promptly headlined its own story asking (rhetorically) "*Is Harvey Weinstein Done in Hollywood?*" B. Lang, Variety, Oct. 5, 2017.

13.	Through it all, Mr. Weinstein maintained his innocence.  Both in person, and through spokespeople, allegations of any intentional wrongdoing were consistently denied by Mr. Weinstein.  See e.g., D. Victor, "*How the Harvey Weinstein Story Has Unfolded*," The New York Times, Oct. 18, 2017 (Weinstein's "spokeswoman, Sallie Hofmeister, said: 'Any allegations of non-consensual sex are unequivocally denied by Mr. Weinstein. Mr. Weinstein has further confirmed that there were never any acts of retaliation against any women for refusing his advances.'").

14.	Mr. Weinstein's protestations aside, claims soon followed.  Between October 5, 2017 and the present day, more than a dozen different legal actions (the "Underlying Lawsuits")

and other claims were asserted against Mr. Weinstein accusing him of improper conduct and/or systemic violations of individuals' rights.  Specific lawsuits were captioned, viz:

(i) People v. The Weinstein Company, et al., New York State Supreme Court Index No. 450293/2018 (the "NY Attorney General Lawsuit");

(ii) Geiss, et al. v. Weinstein, et al., United States District Court, Southern District of New York, Case No. 17-cv-0954 (the "Geiss Lawsuit");

(iii) Noble v. Weinstein, et al., United States District Court, Southern District of New York, Case No. 17-cv-9260 (the "Noble Lawsuit");

(iv) Rehal v. Weinstein, et al., United States District Court, Southern District of New York, Case No. 18-cv-674, later refiled in New York State Supreme Court, Index No. 151738/2018  (the "Rehal Lawsuit");

(v) Canosa v. The Weinstein Company, et al., New York State Supreme Court Index No. 161254/2017 (the "Canosa Lawsuit");

(vi) ABC v. Weinstein et al., High Court of Justice, London, England, Queen's Bench Division, Case No. HQ17-P-04249 (the "ABC Lawsuit");

(vii) Ackers v. Weinstein et al., Los Angeles Superior Court, Case No. BC 681850 (the "Ackers Lawsuit");

(viii) Doe v. Weinstein et al., Ontario, Canada, Case No. CV 17-585459 (the "Doe Ontario Lawsuit");

(ix) Doe v. Weinstein et al., United States District Court for the Central District of California, Case No. 17-cv-08323 (the "Doe Class Action Lawsuit");

(x) Doe v. Weinstein et al., Los Angeles Superior Court, Case No. BC 683411 (the "Doe California Lawsuit");

  (xi) Huett v. The Weinstein Company, et al., Los Angeles Superior Court, Case No. BC680869 (the "Huett Lawsuit"); and

15. Mr. Weinstein was also notified of pre-litigation, formal demands from two additional claimants who retained attorneys to pursue claims against Mr. Weinstein. They are: (1) Bleona Qereti v. The Weinstein Company, *et al*., Demand Letter dated February 26, 2018; and (2) Charlotte Carroll v. Harvey Weinstein, *et al*., Demand Letter dated February 21, 2018 (hereinafter, the "Formal Demand Letters").

16. In addition to the Underlying Lawsuits and Formal Demand Letters, criminal investigations were opened against Mr. Weinstein in London, in New York, and in California (the "Criminal Investigations"). Press accounts detailing those investigations were legion. See e.g., 13 Oct. 2017, BBC News: "*Harvey Weinstein: US and UK police launch investigations*" http://www.bbc.com / news/ entertainment-arts-41597159; 10 Nov. 2017, Chicago Tribune: "*What's next in the criminal investigations of Harvey Weinstein?*" http://ww.chicagotribune.com /entertainment/ct-harvey-weinstein-criminal-investigation-20171110-story.html ("Police departments in London, New York, Los Angeles and Beverly Hills, California, have said they are investigating potential criminal charges in at least 10 different cases."); Mar. 20, 2018, Los Angeles Times: "*Weinstein legal fate rests with 2 prosecutors*" ("NYPD detectives have publicly said they are close to making an arrest and would do so if Weinstein was in New York City.").

### *Mr. Weinstein's Tenders and National Union's Denials*

17. Besieged by civil litigation, scrutinized by investigators, and exiled from TWC, Mr. Weinstein promptly notified National Union of the Underlying Lawsuits and Formal Demand Letters, as well as the Criminal Investigations. Relying upon the promises in National

9

Union's Policy, Mr. Weinstein sought to avail himself of the protections owed to him as a former TWC executive.

18. As it turned out, National Union wanted nothing to do with Mr. Weinstein.

19. Despite its receipt of Mr. Weinstein's December 12, 2017 claim notices, National Union took no action whatsoever to acknowledge his tenders. After more than a month of silence, Mr. Weinstein attempted to contact National Union's adjuster (Alex Fooksman) via telephone and, then, email, to confirm that the insurer's response would soon be forthcoming. As part of that outreach, Mr. Weinstein pointed to California's good faith claim-handling regulations, requiring insurers to make a decision on coverage (up or down) within 40 days of the insured's initial claim presentation. See Cal. Fair Claims Settlement Prac. Reg. §2695.7(b). Mr. Fooksman never responded.

20. Instead, National Union outsourced the handling of Mr. Weinstein's claims to its coverage counsel (Peabody Arnold) who – with the insurer's full knowledge and consent – embarked on a carefully planned campaign of delay and deception. Among National Union's many transgressions:

(a) National Union ignored Mr. Weinstein's repeated requests for information regarding the status of his claim. Despite pending questions, weeks would pass without any substantive response. When National Union did (grudgingly) reply, the insurer proclaimed that it was not subject to California law and that, because of the multiplicity of claims, fact patterns, jurisdictions and legal theories implicated by Mr. Weinstein's notifications, it could unilaterally disregard California's statutory deadlines. Despite all this, National Union never sought any additional information regarding Mr. Weinstein's status, his denials of liability, the nature/extent of the allegations against him, and/or the

status of any underlying matters.  Instead, National Union cut off all communication and went dark.

(b) After weeks of pleading for a coverage response, National Union *finally* released its position on January 30, 2017 ("Denial Letter").  Its resulting analysis was a complete and utter sham.  Whereas, National Union had justified its prior delays as necessary to its individualized claims analysis, the insurers' Denial Letter failed to discuss the particulars of *any* given lawsuit.  As for National Union's rejection of California law and its regulatory regime, the insurer's Denial Letter flip-flopped.  As written, the Letter relied upon – and directly referenced – California's fair claims handling standards.  Indeed, National Union even instructed Mr. Weinstein to address any unhappiness with its Denial Letter to California's Department of Insurance.

(c) With respect to the substance of National Union's Denial Letter, the insurer's coverage decision there was not only wrong, it was actionable.  In addition to improperly disclaiming benefits, National Union intentionally misrepresented the terms of its Policy.  For example, a mainstay of National Union's denial (cutting across the Policy's D&O and EPL coverages) was its assertion that the insurer could reach back more than a decade, to purported misrepresentations in TWC's 2005 insurance application, to preclude claims-made coverage for present day allegations of misconduct.  That National Union <u>knew</u> this was wrong is manifest.  Neither the language of its Policy, nor its inherent logic, supports such a dramatic (mis)interpretation of coverage.  As to Mr. Weinstein's request for coverage for pending criminal investigations, the insurer adopted an entirely adversarial, and wholly unrealistic, stance toward its insured.  Ignoring extensive national (and international) press coverage of criminal inquiries in

London, in New York, and in California – and notwithstanding published reports threatening Mr. Weinstein's imminent arrest – National Union maintained no claim existed under the D&O provisions of its Policy. In other words, National Union did not deny Policy benefits because some particular Policy provision barred coverage. Rather, National Union denied benefits because, in its view, investigators' public statements identifying Mr. Weinstein did not even rise to the level of a cognizable claim under its Policy.

21. Two weeks after receiving National Union's wrongful denial, Mr. Weinstein challenged the insurer's decision via an extensive, written analysis. As before, National Union responded with silence. For weeks, it refused to reply to Mr. Weinstein's polite (but firm) demands for coverage. And when it finally did answer in March 2018, National Union reaffirmed its prior denial . . . but only after *again* shifting its position on the law applicable to its coverage obligations ("National Union's Rejoinder"). Whereas, National Union initially denied the application of California law, its January 2018 coverage Denial Letter relied upon it. When Mr. Weinstein's challenge pointed-out this contradiction, the insurer changed course again. Sort of. Instead of conceding the application of California law, National Union's Rejoinder put forth citations to <u>both</u> New York law <u>and</u> California law, and then ducked any explanation of which law actually applied.

22. The upshot of all this is plain: National Union has resolved to stand against Mr. Weinstein. In all things. On all fronts. And for all time. Absent this Court's intervention, the insurer will not be moved. By this action, Mr. Weinstein seeks to force National Union to honor its contractual obligations, to fund his defense of the Underlying Lawsuits and Criminal

Investigations, and to accept responsibility for the ongoing damage caused by its improper and systemic efforts to avoid coverage.

## FIRST CAUSE OF ACTION

**(Breach of Contract for Criminal Investigations by National Union and ROES 1-10)**

23. Mr. Weinstein incorporates the allegations of Paragraphs 1 through 22 of this Third-Party Complaint, as though fully set forth herein anew.

24. Mr. Weinstein timely tendered to National Union various writings, wherein he is specifically identified by investigating authorities in London, in New York, and in California as a person against whom a criminal proceeding may be commenced.

25. By its terms, the D&O Section of National Union's Policy provides coverage to insured individuals who, like Mr. Weinstein, are identified by investigating authorities as persons against whom criminal proceedings may be commenced.

26. Notwithstanding the terms and conditions of National Union's Policy, the insurer responded to Mr. Weinstein's tender by wrongfully denying coverage for the Criminal Investigations.

27. Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of National Union's Policy are not exhausted and, in all events, were not exhausted at the time Mr. Weinstein requested coverage for the Criminal Investigations.

28. Mr. Weinstein has performed each and every material obligation imposed upon him by the National Union Policy, except to the extent such performance was either prevented or excused by National Union.

29.     As a direct and proximate result of National Union's breach, Mr. Weinstein has been wrongfully denied the benefits of the National Union Policy, and he has suffered damages in such amounts as will be proven at the trial of this Third-Party Complaint.

## SECOND CAUSE OF ACTION

**(Breach of Contract for the Underlying Lawsuits and Formal Demand Letters by National Union and ROES 1-10)**

30.     Mr. Weinstein incorporates the allegations of Paragraphs 1 through 29 of this Third-Party Complaint, as though fully set forth herein anew.

31.     Mr. Weinstein timely tendered to National Union each of the lawsuits comprising the Underlying Lawsuits, as well as the Formal Demand Letters.

32.     By its terms, the EPL Section of National Union's Policy specifically provided coverage to Mr. Weinstein for the Underlying Lawsuits and Formal Demand Letters and, *indeed, National Union has acknowledged that each of the claimants alleges an "Employment Practices Violation" that triggers coverage under the EPL section of the National Union Policy*.

33.     Notwithstanding this acknowledgment, National Union responded to Mr. Weinstein's tender by wrongfully denying coverage for each of the Underlying Lawsuits and Formal Demand Letters.

34.     Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of the National Union Policy are not exhausted and, in all events, were not exhausted at the time he requested coverage for the Underlying Lawsuits and Formal Demand Letters.

35.     Mr. Weinstein has performed each and every material obligation imposed upon him by the National Union Policy, except to the extent such performance was either prevented or excused by National Union.

36. As a direct and proximate result of National Union's breach, Mr. Weinstein has been wrongfully denied the benefits of the National Union Policy and has suffered damages in such amounts as will be proven at the trial of this Third-Party Complaint.

## THIRD CAUSE OF ACTION

**(Breach of the Covenant of Good Faith and Fair Dealing by National Union and ROES 1-10)**

37. Mr. Weinstein incorporates the allegations of Paragraphs 1 through 36 of this Third-Party Complaint, as though fully set forth herein anew.

38. As set forth above, National Union has engaged in extensive gamesmanship in its (mis)handling of Mr. Weinstein's claims for coverage under its Policy.  Separate and apart from National Union's wrongful denials of coverage, the insurer has refused to undertake good faith steps designed to promptly, fairly, and equitably resolve Mr. Weinstein's claims for coverage.  In fact, precisely the reverse is true.  National Union has systemically failed and refused to timely communicate with its insured regarding the status and disposition of his claims; it has intentionally misrepresented the terms, conditions, and operation of its Policy and its language; it has ignored extensive evidence of ongoing criminal investigations of Mr. Weinstein; and it has made sport of disclosing the law governing its coverage obligations.  Atop all this, National Union has forced Mr. Weinstein to hire coverage counsel and to bring this lawsuit to ensure the timely and appropriate handling of his claims for coverage.  In this and other ways, National Union has acted without proper cause, and has taken positions and deployed tactics which no reasonable insurer, under the given facts, would be expected to engage in.  Regrettably, National Union did.  Repeatedly.

39. As a direct and proximate result of National Union's delays, gamesmanship and other misconduct, Mr. Weinstein has suffered consequential damages above and beyond its mere

15

denial of insurance benefits. Among other things, Mr. Weinstein has been required to reorder his finances to ensure the funding of defense counsel for claims wrongfully denied. He has also been forced to hire coverage counsel and other experts to preserve and protect his rights to coverage, to ameliorate the effects of National Union's misdeeds, and to prosecute this coverage lawsuit. Damages for these and other amounts will be proven at the trial of this Third-Party Complaint.

40. Finally, to the extent California law is deemed to apply to this cause of action, Mr. Weinstein further alleges that National Union's conduct was malicious, oppressive, and fraudulent, and undertaken with willful disregard of his rights as an insured. Consequently, Mr. Weinstein is entitled to recover punitive damages both to punish National Union for its transgressions, and to deter other insurers from engaging in similarly, wrongful conduct.

**WHEREFORE,** Mr. Weinstein prays for relief as follows:

1. For compensatory damages attendant to National Union's breach of contract regarding coverage under its Policy for the Criminal Investigations;

2. For compensatory damages attendant to National Union's breach of contract regarding coverage under its Policy for each of the Underlying Lawsuits and Formal Demand Letters;

3. For compensatory and other damages attendant to National Union's breach of the covenant and good faith and fair dealing;

4. To the extent not included above, for recovery of attorneys' fees caused by reason of National Union forcing Mr. Weinstein to bring this action for coverage and, where California law is deemed to apply to Mr. Weinstein's Third Cause of Action (Breach of the Covenant of

Good Faith and Fair Dealing), for recovery of attorneys' fees and costs consistent with principles set forth in Brandt v. Superior Court, 37 Cal. 3d 813 (1985);

    5.    To the extent California law applies to Mr. Weinstein's Third Cause of Action (Breach of the Covenant of Good Faith and Fair Dealing), for punitive and/or exemplary damages;

    6.    For costs of suits;

    7.    For interest on all amounts awarded; and

    8.    For such other and further relief as this Court deems just and proper.

Dated:  May 7, 2018                      Respectfully submitted,

                                          By /s/ Michael Bruce Abelson
                                          Michael Bruce Abelson
                                          **ABELSON HERRON HALPERN LLP**
                                          Michael Bruce Abelson (Pro Hac Vice)
                                          Leslie A. Pereira (Pro Hac Vice)
                                          333 South Grand Avenue, Suite 1550
                                          Los Angeles, California  90071-1559
                                          Tel: (213) 402-1900
                                          Email: mabelson@abelsonherron.com
                                          Email: lpereira@abelsonherron.com

                                          **MORRISON COHEN LLP**
                                          Mary E. Flynn
                                          909 Third Avenue, 27th Floor
                                          New York, New York  10022-4784
                                          Tel: (212) 735-8631
                                          Email:  mflynn@morrisoncohen.com

                                          *Attorneys for Third-Party Plaintiff*
                                          *Harvey Weinstein*

## JURY TRIAL DEMAND

Third-Party Plaintiff Harvey Weinstein herewith demands a trial by jury of all claims set forth in his accompanying Third-Party Complaint.

Dated:  May 7, 2018                                Respectfully submitted,

By /s/ Michael Bruce Abelson
Michael Bruce Abelson
**ABELSON HERRON HALPERN LLP**
   Michael Bruce Abelson (Pro Hac Vice)
   Leslie A. Pereira (Pro Hac Vice)
333 South Grand Avenue, Suite 1550Los Angeles, California  90071-1559
Tel: (213) 402-1900
Email: mabelson@abelsonherron.com
Email: lpereira@abelsonherron.com

**MORRISON COHEN LLP**
Mary E. Flynn
909 Third Avenue, 27th Floor
New York, New York 10022-4784
Tel:  (212) 735-8631
Email:  mflynn@morrisoncohen.com

*Attorneys for Third-Party Plaintiff Harvey Weinstein*

### CERTIFICATE OF SERVICE

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK – MANHATTAN
### <u>FEDERAL INSURANCE COMPANY, et al. v. HARVEY WEINSTEIN</u>

*District Court Case No. 1:18-cv-02526-PAC (RWLx)*

I am over the age of 18 and not a party to the within action; I am a partner of Abelson Herron Halpern LLP in the County of Los Angeles at 333 South Grand Avenue, Suite 1550, Los Angeles  California  90071-1559.

On May 8, 2018, I served the document below described as:

**DEFENDANT HARVEY WEINSTEIN'S THIRD-PARTY COMPLAINT FOR BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING (BAD FAITH)**

The document was served by the following means:

✗ **BY ELECTRONIC TRANSMISSION VIA NEF**  I electronically filed the foregoing document through the Court's CM/ECF system, which sent Notification of Electronic Filing to the attorneys at the e-mail addresses listed below.  They have appeared in this case and have consented to receive service through the Court's CM/EFC System.  *L.R. 5.2(a)*

Email: paul.koepff@clydeco.us

| | |
|---|---|
| Paul R. Koepff, Esq. | *Counsel for Plaintiffs and Counter-Defendants,* |
| CLYDE & CO US LLP | FEDERAL INSURANCE COMPANY; |
| The Chrysler Building | CHUBB INDEMNITY INSURANCE COMPANY; |
| 405 Lexington Avenue | VIGILANT INSURANCE COMPANY; |
| New York, New York  10174 | PACIFIC INDEMNITY INSURANCE COMPANY; |
| | and GREAT NORTHERN INSURANCE COMPANY |

Email: jnoyes@wwmlawyers.com

| | |
|---|---|
| Joyce F. Noyes, Esq.* | *Counsel for Plaintiffs and Counter-Defendants*, |
| Walker Wilcox Matousek Llp | FEDERAL INSURANCE COMPANY; |
| 1 North Franklin Street, Suite 3200 | CHUBB INDEMNITY INSURANCE COMPANY; |
| Chicago, Illinois  60606 | VIGILANT INSURANCE COMPANY; |
| * *Admitted Pro Hac Vice* | PACIFIC INDEMNITY INSURANCE COMPANY; |
| | and GREAT NORTHERN INSURANCE COMPANY |

I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct.

Executed on May 8, 2018 at Los Angeles, California.

/s/ Michael Bruce Abelson