**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, et al.<br><br>    Plaintiffs,<br><br>    -against-<br><br>HARVEY WEINSTEIN,<br><br>    Defendant. | 1:18-cv-02526-PAC (RWLx)<br><br><br>**DEFENDANT HARVEY WEINSTEIN'S**<br>**FIRST AMENDED ANSWER TO**<br>**COMPLAINT AND COUNTERCLAIM** |
| HARVEY WEINSTEIN,<br><br>    Counterclaimant,<br><br>    -against-<br><br>FEDERAL INSURANCE COMPANY, CHUBB INDEMNITY INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, PACIFIC INDEMNITY INSURANCE COMPANY, and GREAT NORTHERN INSURANCE COMPANY,<br><br>    Counter-Defendants. | |
| HARVEY WEINSTEIN,<br><br>    Third-Party Plaintiff,<br><br>    -against-<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al.<br><br>    Third-Party Defendants. | |

Defendant Harvey Weinstein files this First Amended Answer and Counterclaim in response to the Complaint of Plaintiffs Federal Insurance Company, Chubb Indemnity Insurance Company, Vigilant Insurance Company, Pacific Indemnity Insurance Company, and Great Northern Insurance Company (collectively, "Plaintiffs") as follows:

## **NATURE OF THE ACTION**

1.      With respect to Paragraph 1 of the Complaint, Defendant Weinstein admits that Plaintiffs have brought the instant action for declaratory relief.  As to Plaintiffs' allegation "that certain [unspecified] insurance policies it issued" to Defendant "do not provide coverage or indemnity" for the referenced "Underlying Lawsuits," Defendant is without knowledge or information sufficient to admit or deny the allegations contained in the balance of the Paragraph.

2.      With respect to Paragraph 2 of the Complaint, Defendant Weinstein is without knowledge or information sufficient to admit or deny the Plaintiffs' allegations regarding this action's "substantial nexus to the State of New York," inasmuch as Plaintiffs' Complaint fails to specify the "eighty insurance policies involved in this action," the issuer of the [unspecified] policies," the address to which the unspecified policies were issued, where they were delivered, or information relevant to the identification of the referenced "New York agent" and/or the place of premium payment.

3.      With respect to Paragraph 3 of the Complaint, Defendant Weinstein denies that he is a resident of the State of New York although, in the past, he has maintained property within the state.  Defendant Weinstein admits that he was the co-founder, co-Chairman and co-CEO of The Weinstein Company ("TWC") from its inception in or about 2005 until his wrongful termination in October 2017. At that time, TWC maintained offices at 375 Greenwich Street, in New York City, back office operations at 99 Hudson Street in New York City, as well as offices in Los Angeles, California.  Defendant Weinstein is without knowledge or information sufficient to admit or deny the balance of the Complaint's allegations including, without limitation, references to unspecified business transactions in the State of New York that Plaintiffs allege were "regularly transacted . . . for the past twelve years and at all times mentioned herein."

4.      With respect to Paragraph 4 of the Complaint, Defendant Weinstein admits that five of the so-called "Underlying Lawsuits" referenced in the Complaint were filed in New York's state or federal Courts, including one lawsuit by New York's Attorney General.  As to the balance of the Paragraph's allegations, Plaintiffs purport to generalize and characterize the Attorney General's lawsuit and, thus, no response is required of Defendant Weinstein. Nevertheless, Defendant Weinstein denies the balance of the Paragraph's allegations including, without limitation, the allegations contained in each of the Complaint's Underlying Lawsuits, as well as all allegations of sexual assault, harassment, and/or violations of New York law.

5.      With respect to Paragraph 5 of the Complaint, Plaintiffs purport to generally summarize and characterize the allegations contained in 11 different "Underlying Lawsuits" referenced in the Complaint and, thus, no response is required from Defendant Weinstein. Nevertheless, Defendant Weinstein denies the accuracy of Plaintiffs' summary and characterization, and further denies the allegations contained in each of the Underlying Lawsuits.

6.      With respect to Paragraph 6 of the Complaint, Plaintiffs purport to generally summarize and characterize the allegations contained in 11 different Underlying Lawsuits referenced in the Complaint and, thus, no response is required from Defendant Weinstein. Nevertheless, Defendant Weinstein denies the accuracy of Plaintiffs' summary and characterization, and further denies the allegations contained in each of the Underlying Lawsuits.

7.      With respect to Paragraph 7 of the Complaint, Plaintiffs purport to generally characterize the status of plaintiffs in the 11 Underlying Lawsuits referenced in the Complaint, as well as "also over a hundred other woman" who are unidentified by Plaintiffs and who, as alleged, have no apparent connection to the instant proceeding.  Given the nature of these

allegations, no response is required from Defendant Weinstein who, nevertheless, denies the Paragraph's allegations.

8.      With respect to Paragraph 8 of the Complaint, Defendant Weinstein admits that Plaintiffs purport to seek a declaratory judgment in this proceeding, but denies that any such relief is proper here.

## **PARTIES**

9.      With respect to Paragraph 9 of the Complaint, Defendant Weinstein admits that Plaintiff Federal Insurance Company is an Indiana corporation with offices located in New Jersey.  While Defendant Weinstein admits that, in the past, he was an insured under various insurance policies issued by Federal Insurance Company, given the specificity lacking in the instant Complaint, Defendant Weinstein is without information sufficient to admit or deny whether the Federal issued relevant insurance policies to the unspecified "New York address" referenced in the Complaint.

10.     With respect to Paragraph 10 of the Complaint, Defendant Weinstein admits that Plaintiff Chubb Indemnity is a New York corporation, but denies that its principal place of business is located in New Jersey.  According to the New York Insurance Department's website, Chubb Indemnity's business address is 1133 Avenue of the Americas, New York, New York 10036.  While Defendant Weinstein admits that, in the past, he was an insured under various insurance policies issued by Chubb Indemnity, given the specificity lacking in the instant Complaint, Defendant Weinstein is without information sufficient to admit or deny whether the Chubb Indemnity issued relevant insurance policies to the unspecified "New York address" referenced in the Complaint.

11.     With respect to Paragraph 11 of the Complaint, Defendant Weinstein admits that Plaintiff Great Northern Insurance Company is an Indiana corporation with offices located in New Jersey.  While Defendant Weinstein admits that, in the past, he was an insured under various insurance policies issued by Great Northern, given the specificity lacking in the instant Complaint, Defendant Weinstein is without information sufficient to admit or deny whether the Great Northern issued relevant insurance policies to the unspecified "New York address" referenced in the Complaint.

12.     With respect to Paragraph 12 of the Complaint, Defendant Weinstein admits that Plaintiff Vigilant Insurance Company is a New York corporation, but denies that its principal place of business is located in New Jersey.  According to the New York Insurance Department's website, Vigilant's business address is 1133 Avenue of the Americas, New York, New York 10036.

13.     With respect to Paragraph 13 of the Complaint, Defendant Weinstein admits that Plaintiff Pacific Indemnity Company is a Wisconsin corporation with offices located in New Jersey.

14.     With respect to Paragraph 14 of the Complaint, Defendant Weinstein is without information sufficient to admit or deny the status of Plaintiffs' past or present licensure with the State of New York.

15.     With respect to Paragraph 15 of the Complaint, Defendant Weinstein denies that he is a resident of New York, New York.  Defendant Weinstein admits that he was the co-founder, co-Chairman and co-CEO of The Weinstein Company ("TWC") from its inception in or about 2005 until his wrongful termination in October 2017. At that time, TWC maintained offices at 375 Greenwich Street, in New York City, back office operations at 99 Hudson Street in

New York City, as well as offices in Los Angeles, California.  Defendant Weinstein is without

knowledge or information sufficient to admit or deny the balance of the Complaint's allegations

including, without limitation, references to unspecified regular business transactions "at all times

mentioned" in Plaintiffs' Complaint.

## JURISDICTION AND VENUE

16.     Defendant Weinstein denies the basis of jurisdiction alleged in Paragraph 16 of

the Complaint.

17.     Defendant Weinstein denies the propriety of venue alleged in Paragraph 17 of the

Complaint and, accordingly, he has removed this action to the United States District Court for

the Southern District of New York based on diversity of citizenship and a jurisdictional amount

in excess of $75,000.

## THE INSURANCE POLICIES

18.     With respect to Paragraph 18 of the Complaint, Defendant Weinstein admits that

Plaintiffs have, over time, issued various policies of insurance to himself and/or to members of

his family, however, given the specificity lacking in the instant Complaint, Defendant Weinstein

is without information sufficient to admit or deny the nature or extent of coverage relating

thereto.

19.     With respect to Paragraph 19 of the Complaint, Defendant Weinstein admits that,

for the time period 1994 to 2018, Plaintiffs issued policies to himself and/or to members of his

family.  As to the policies listed on Appendix A to the Complaint, Defendant Weinstein admits

that Plaintiffs allege those policies are at issue in the Complaint, however, Defendant Weinstein

denies that those are the only policies issued by Plaintiffs that provide coverage for the

Underlying Lawsuit.  As set forth in the accompanying Counterclaim, Plaintiffs Defendant

Weinstein alleges that Plaintiffs have purposefully omitted reference in its action to other insurance policies issued by Plaintiff during the relevant time period which, indisputably, extend coverage to Defendant Weinstein for the Underlying Lawsuits.

20.     With respect to Paragraph 20 of the Complaint, Defendant Weinstein admits that the policies listed in Appendix A of the Complaint generally contain the language quoted by Plaintiffs, but that other substantial portions of the coverage are not quoted.  As to such other policies listed in Appendix A, Defendant Weinstein denies the balance of the allegations in Paragraph 20.

21.     With respect to Paragraph 21 of the Complaint, Defendant Weinstein admits that "certain of the policies" listed in Appendix A of the Complaint contain the language quoted by Plaintiffs.  As to such other policies listed in Appendix A, Defendant Weinstein denies the balance of the allegations in Paragraph 21.

22.     With respect to Paragraph 22 of the Complaint, Defendant Weinstein admits all of the policies listed in Appendix A contain the quoted language.

23.     With respect to Paragraph 23 of the Compliant, Defendant Weinstein admits that "certain of the policies" listed in Appendix A of the Complaint contain the language quoted by Plaintiffs.  As to such other policies listed in Appendix A, Defendant Weinstein denies the balance of the allegations in Paragraph 23.

24.     With respect to Paragraph 24 of the Compliant, Defendant Weinstein admits that "certain of the policies" listed in Appendix A of the Complaint contain the language quoted by Plaintiffs.  As to such other policies listed in Appendix A, Defendant Weinstein denies the balance of the allegations in Paragraph 24.

25.     With respect to Paragraph 25 of the Compliant, Defendant Weinstein admits that "certain of the policies" listed in Appendix A of the Complaint contain the language quoted by Plaintiffs.  As to such other policies listed in Appendix A, Defendant Weinstein denies the balance of the allegations in Paragraph 25.

26.     With respect to Paragraph 26 of the Compliant, Defendant Weinstein admits that "certain of the policies" listed in Appendix A of the Complaint contain the language quoted by Plaintiffs.  As to such other policies listed in Appendix A, Defendant Weinstein denies the balance of the allegations in Paragraph 26.

27.     With respect to Paragraph 27 of the Compliant, Defendant Weinstein admits that "certain of the policies" listed in Appendix A of the Complaint contain the language quoted by Plaintiffs.  As to such other policies listed in Appendix A, Defendant Weinstein denies the balance of the allegations in Paragraph 27.

## THE UNDERLYING LAWSUITS, NEW YORK ATTORNEY GENERAL LAWSUIT NEW YORK COUNTY, NEW YORK

28.     With respect to Paragraph 28 of the Compliant, Defendant Weinstein admits that on or about February 11, 2018, New York Attorney General Eric Schneiderman filed a lawsuit in New York's Supreme Court captioned People v. The Weinstein Company, et al. (the "Attorney General's Lawsuit"), which contains the language quoted by Plaintiffs.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

29.     With respect to Paragraph 29 of the Complaint, Defendant Weinstein admits that the Attorney General's Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

30.     With respect to Paragraph 30 of the Complaint, Defendant Weinstein admits that the Attorney General's Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterization.

31.     With respect to Paragraph 31 of the Complaint, Defendant Weinstein admits the existence of the Attorney General's Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Attorney General's Lawsuit.

32.     With respect to Paragraph 32 of the Complaint, Defendant Weinstein admits that the Attorney General's Lawsuit contains the quoted language, but denies all of the allegations of the Attorney General's Lawsuit.

33.     With respect to Paragraph 33 of the Complaint, Defendant Weinstein admits the existence of the Attorney General's Lawsuit and its quoted language, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Attorney General's Lawsuit.

34.     With respect to Paragraph 34 of the Complaint, Defendant Weinstein admits the existence of the Attorney General's lawsuit and its quoted language, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Attorney General's Lawsuit.

35.     With respect to Paragraph 35 of the Complaint, Defendant Weinstein admits the existence of the Attorney General's Lawsuit and its quoted language, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Attorney General's Lawsuit.

36.     With respect to Paragraph 36 of the Complaint, Defendant Weinstein admits the existence of the Attorney General's Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Attorney General's Lawsuit.

### GEISS PUTATIVE CLASS ACTION V. HARVEY WEINSTEIN, ET AL. SOUTHERN DISTRICT OF NEW YORK

37.     With respect to Paragraph 37 of the Compliant, Defendant Weinstein admits that on or about December 6, 2017, a lawsuit was filed in the United States District Court for the Southern District of New York captioned <u>Geiss, et al. v. Weinstein, et al.</u>, Case No. 17-cv-0954 (the "Geiss Lawsuit"), which contains the language quoted by Plaintiffs.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

38.     With respect to Paragraph 38 of the Complaint, Defendant Weinstein admits that the Geiss Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

39.     With respect to Paragraph 39 of the Complaint, Defendant Weinstein admits the existence of the Geiss Lawsuit and its quoted language, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Geiss Lawsuit.

40.     With respect to Paragraph 40 of the Complaint, Defendant Weinstein admits the existence of the Geiss Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Geiss Lawsuit.

41.     With respect to Paragraph 41 of the Complaint, Defendant Weinstein admits that the Geiss Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

42.     With respect to Paragraph 42 of the Complaint, Defendant Weinstein admits that the Geiss Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

43.     With respect to Paragraph 43 of the Complaint, Defendant Weinstein admits that the Geiss Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

44.     With respect to Paragraph 44 of the Complaint, Defendant Weinstein admits that the Geiss Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

45.     With respect to Paragraph 45 of the Complaint, Defendant Weinstein admits that the Geiss Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

46.     With respect to Paragraph 46 of the Complaint, Defendant Weinstein admits that the Geiss Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions

and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

47.     With respect to Paragraph 47 of the Complaint, Defendant Weinstein admits that the Geiss Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

48.     With respect to Paragraph 48 of the Complaint, Defendant Weinstein admits the existence of the Geiss Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Geiss Lawsuit.

## NOBLE V. HARVEY WEINSTEIN, ET AL.
## SOUTHERN DISTRICT OF NEW YORK

49.     With respect to Paragraph 49 of the Compliant, Defendant Weinstein admits that on or about November 27, 2017, a lawsuit was filed in the United States District Court for the Southern District of New York captioned Noble v. Weinstein, et al., Case No. 17-cv-9260 (the "Noble Lawsuit").  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

50.     With respect to Paragraph 50 of the Complaint, Defendant Weinstein admits the existence of the Noble Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Noble Lawsuit.

51.     With respect to Paragraph 51 of the Complaint, Defendant Weinstein admits that the Noble Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions

and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

52.     With respect to Paragraph 52 of the Complaint, Defendant Weinstein admits that the Noble Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

53.     With respect to Paragraph 53 of the Complaint, Defendant Weinstein admits that the Noble Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

54.     With respect to Paragraph 54 of the Complaint, Defendant Weinstein admits that the Noble Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

55.     With respect to Paragraph 55 of the Complaint, Defendant Weinstein admits the existence of the Noble Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Noble Lawsuit.

56.     With respect to Paragraph 56 of the Complaint, Defendant Weinstein admits that the Noble Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

**SANDEEP REHAL V. HARVEY WEINSTEIN, ET AL.**
**SOUTHERN DISTRICT OF NEW YORK**

57.    With respect to Paragraph 57 of the Compliant, Defendant Weinstein admits that on or about January 25, 2018, a lawsuit was filed in the United States District Court for the Southern District of New York captioned Rehal v. Weinstein, et al., Case No. 18-cv-674 (the "Rehal Lawsuit").  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

58.    With respect to Paragraph 58 of the Complaint, Defendant Weinstein admits the existence of the Rehal Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Rehal Lawsuit.

59.    With respect to Paragraph 59 of the Complaint, Defendant Weinstein admits that the Rehal Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

60.    With respect to Paragraph 60 of the Complaint, Defendant Weinstein admits that the Rehal Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

61.    With respect to Paragraph 61 of the Complaint, Defendant Weinstein admits the existence of the Rehal Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Rehal Lawsuit.

## ALEXANDRA CANOSA V. HARVEY WEINSTEIN, ET AL.
## NEW YORK COUNTY, NEW YORK

62.     With respect to Paragraph 62 of the Compliant, Defendant Weinstein admits that on or about December 20, 2017, a lawsuit was filed in the Supreme Court of the State of New York captioned Canosa v. The Weinstein Company, et al., Index No. 161254/2017 (the "Canosa Lawsuit").  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

63.     With respect to Paragraph 63 of the Complaint, Defendant Weinstein admits that the Canosa Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

64.     With respect to Paragraph 64 of the Complaint, Defendant Weinstein admits that the Canosa Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

65.     With respect to Paragraph 65 of the Complaint, Defendant Weinstein admits that the Canosa Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

## ABC V. HARVEY WEINSTEIN, ET AL.
## HIGH COURT OF JUSTICE (ENGLAND)

66.     With respect to Paragraph 66 of the Compliant, Defendant Weinstein admits that on or about November 23, 2017, a lawsuit was filed in the High Court of Justice, London, England, Queen's Bench Division captioned ABC v. Weinstein, et al., Case No. HQ17-P-04249 (the "ABC Lawsuit").  As to the underlying lawsuit's contentions and/or Plaintiffs'

characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

67.     With respect to Paragraph 67 of the Complaint, Defendant Weinstein admits that the ABC Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

68.     With respect to Paragraph 68 of the Complaint, Defendant Weinstein admits that the ABC Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

69.     With respect to Paragraph 69 of the Complaint, Defendant Weinstein admits that the ABC Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

70.     With respect to Paragraph 70 of the Complaint, Defendant Weinstein admits that the ABC Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

## GREGORY ACKERS V. HARVEY WSINSTEIN AND TWC
## LOS ANGELES COUNTY, CALIFORNIA

71.     With respect to Paragraph 71 of the Complaint, Defendant Weinstein admits that on or about November 2, 2017, a lawsuit was filed in the Superior Court of the State of California, for the County of Los Angeles captioned Ackers v. Weinstein, et al., Case No. BC681850 (the "Ackers Lawsuit").  As to the underlying lawsuit's contentions and/or Plaintiffs'

characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

72.     With respect to Paragraph 72 of the Complaint, Defendant Weinstein admits the existence of the Ackers Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Ackers Lawsuit.

73.     With respect to Paragraph 73 of the Complaint, Defendant Weinstein admits the existence of the Ackers Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Ackers Lawsuit.

74.     With respect to Paragraph 74 of the Complaint, Defendant Weinstein admits that the Ackers Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

## JANE DOE V. HARVEY WEINSTEIN, ET AL.
## ONTARIO, CANADA

75.     With respect to Paragraph 75 of the Complaint, Defendant Weinstein admits that on or about October 31, 2017, a lawsuit was filed in the courts of Ontario, Canada captioned Doe v. Weinstein, et al., Case No. CV 17-585459 (the "Doe Ontario Lawsuit").  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

76.     With respect to Paragraph 76 of the Complaint, Defendant Weinstein admits the existence of the Doe Ontario Lawsuit and its attendant allegations, but denies Plaintiffs'

characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Doe Ontario Lawsuit.

77.     With respect to Paragraph 77 of the Complaint, Defendant Weinstein admits that the Doe Ontario Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

78.     With respect to Paragraph 78 of the Complaint, Defendant Weinstein admits the existence of the Doe Ontario Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Doe Ontario Lawsuit.

## JANE DOE PUTATIVE CLASS ACTION
## CENTRAL DISTRICT OF CALIFORNIA

79.     With respect to Paragraph 79 of the Compliant, Defendant Weinstein admits that on or about November 15, 2017, a lawsuit was filed in the United States District Court for the Central District of California captioned Doe v. Weinstein, et al., Case No. 17-cv-08323 (the "Doe Class Action Lawsuit").  As to the underlying lawsuit's contentions and/or Plaintiffs' characterization, Defendant Weinstein denies all of the allegations of the Doe Class Action Lawsuit.

80.     With respect to Paragraph 80 of the Complaint, Defendant Weinstein admits the existence of the Doe Class Action Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Doe Class Action Lawsuit.

81.     With respect to Paragraph 81 of the Complaint, Defendant Weinstein admits that the Doe Class Action Lawsuit contains the quoted language.  As to the underlying lawsuit's

contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

82.     With respect to Paragraph 82 of the Complaint, Defendant Weinstein admits the existence of the Doe Class Action Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Doe Class Action Lawsuit.

83.     With respect to Paragraph 83 of the Complaint, Defendant Weinstein admits the existence of the Doe Class Action Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Doe Class Action Lawsuit.

## JANE DOE V. HARVEY WEINSTEIN, ET AL. LOS ANGELES COUNTY, CA

84.     With respect to Paragraph 84 of the Complaint, Defendant Weinstein admits that on or about November 14, 2017, a lawsuit was filed in the Superior Court of the State of California, for the County of Los Angeles captioned Doe v. Weinstein, et al., Case No. BC683411 (the "Doe California Lawsuit").  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

85.     With respect to Paragraph 85 of the Complaint, Defendant Weinstein admits the existence of the Doe California Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Doe California Lawsuit.

86.     With respect to Paragraph 86 of the Complaint, Defendant Weinstein admits that the Doe California Action Lawsuit contains the quoted language.  As to the underlying lawsuit's

contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

87.     With respect to Paragraph 87 of the Complaint, Defendant Weinstein admits the existence of the Doe California Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Doe California Lawsuit.

## HUETT V. HARVEY WEINSTEIN, ET AL.
## LOS ANGELES COUNTY, CALIFORNIA

88.     With respect to Paragraph 88 of the Compliant, Defendant Weinstein admits that on or about October 24, 2017, a lawsuit was filed in the Superior Court of the State of California, for the County of Los Angeles captioned Huett v. The Weinstein Company, et al., Case No. BC680869 (the "Huett Lawsuit").  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

89.     With respect to Paragraph 89 of the Complaint, Defendant Weinstein admits the existence of the Huett Lawsuit and its attendant allegations, but denies Plaintiffs' characterizations thereof.  Additionally, Defendant Weinstein denies all of the allegations of the Huett Lawsuit.

90.     With respect to Paragraph 90 of the Complaint, Defendant Weinstein admits that the Huett Lawsuit contains the quoted language.  As to the underlying lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

## CHUBB'S COVERAGE POSITION

91.     With respect to Paragraph 91 of the Complaint, Defendant Weinstein admits the allegations there.

92.     With respect to Paragraph 92 of the Complaint, Defendant Weinstein admits that Plaintiffs' issued letters denying coverage for the Underlying Lawsuits but denies that Plaintiffs either properly (or sufficiently) identified the policies and/or the bases for their coverage determinations.  As the Counterclaim here also alleges, Plaintiffs failed to, among other things, properly consider other policies which, indisputably, provided coverage for the Underlying Lawsuits.

93.     With respect to Paragraph 93 of the Complaint, Defendant Weinstein admits the existence of Plaintiffs' denial letters for the Underlying Lawsuits and their attendant explanations, however, Defendant Weinstein denies both the sufficiency and/or propriety of those determinations.

94.     With respect to Paragraph 94 of the Complaint, Defendant Weinstein admits the existence of Plaintiffs' denial letters for the Underlying Lawsuits and their attendant explanations, however, Defendant Weinstein denies both the sufficiency and/or propriety of those determinations.

95.     With respect to Paragraph 95 of the Complaint, Defendant Weinstein admits the existence of Plaintiffs' denial letters for the Underlying Lawsuits and their attendant explanations, however, Defendant Weinstein denies both the sufficiency and/or propriety of those determinations.

96.     With respect to Paragraph 96 of the Complaint, Defendant Weinstein admits the existence of Plaintiffs' denial letters for the Underlying Lawsuits and their attendant

explanations, however, Defendant Weinstein denies both the sufficiency and/or propriety of those determinations.

97.     With respect to Paragraph 97 of the Complaint, Defendant Weinstein admits the existence of Plaintiffs' denial letters for the Underlying Lawsuits and their attendant explanations, however, Defendant Weinstein denies both the sufficiency and/or propriety of those determinations.

98.     With respect to Paragraph 98 of the Complaint, Defendant Weinstein admits the existence of Plaintiffs' denial letters for the Underlying Lawsuits and their attendant explanations, however, Defendant Weinstein denies both the sufficiency and/or propriety of those determinations.

99.     With respect to Paragraph 99 of the Complaint, Defendant Weinstein admits the existence of Plaintiffs' denial letters for the Underlying Lawsuits and their attendant explanations, however, Defendant Weinstein denies both the sufficiency and/or propriety of those determinations.

100.    With respect to Paragraph 100 of the Complaint, Defendant Weinstein admits that on or about February 22, 2018, his attorneys challenged Plaintiffs' denial of the Doe California Lawsuit, but denies that was the only challenge to Plaintiffs' denials.

101.    With respect to Paragraph 101 of the Complaint, Plaintiffs' stated position is a legal conclusion and requires no response from Defendant Weinstein.

## COUNT I

**(Declaratory Judgment – The Insuring Agreement Of the Personal Liability Coverage Of The Chubb Policies Is Not Triggered By The Underlying Lawsuits Because The Damages Do Not Arise Out Of An Occurrence)**

102.    With respect to Paragraph 102 of the Complaint, Defendant Weinstein realleges and incorporates by reference his responses to Paragraphs 1 to 101 of this First Amended Answer and Counterclaim.

103.    With respect to Paragraph 103 of the Complaint, Defendant Weinstein notes that the policies referenced in the Complaint are not attached to the operative pleading and, therefore, Defendant is without knowledge or information sufficient to admit or deny the allegations set forth therein.

104.    With respect to Paragraph 104 of the Complaint, Defendant Weinstein notes that the policies referenced in the Complaint are not attached to the operative pleading and, therefore, Defendant is without knowledge or information sufficient to admit or deny the allegations set forth therein.

105.    With respect to the Paragraph 105 of the Complaint, Defendant Weinstein admits to the existence of the Underlying Lawsuits and their attendant allegations.  As to the Underlying Lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

106.    With respect to Paragraph 106 of the Complaint, Plaintiffs' stated position is a legal conclusion and is hereby denied by Defendant Weinstein.

107.    With respect to Paragraph 107 of the Complaint, Plaintiffs' stated position is a legal conclusion and is hereby denied by Defendant Weinstein.

## COUNT II

**(Declaratory Judgment – The Insuring Agreement of the Personal Liability Coverage of Any Policy Not in Effect at the Time of a Plaintiff's Injury Is Not Triggered**

108.    With respect to Paragraph 108 of the Complaint, Defendant Weinstein realleges and incorporates by reference his responses to Paragraphs 1 to 107 of this First Amended Answer and Counterclaim.

109.     With respect to Paragraph 109 of the Complaint, Defendant Weinstein notes that the policies referenced in the Complaint are not attached to the operative pleading and, therefore, Defendant is without knowledge or information sufficient to admit or deny the allegations set forth therein.

110.    With respect to the Paragraph 110 of the Complaint, Defendant Weinstein admits to the existence of the Underlying Lawsuits and their attendant allegations.  As to the Underlying Lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

111.    With respect to Paragraph 111 of the Complaint, Plaintiffs' stated position is a legal conclusion and is hereby denied by Defendant Weinstein.

## COUNT VIII

**(Declaratory Judgment – Defense and Indemnity Coverage for the Underlying Lawsuits Is Precluded Under the Policies by the Intentional Acts Exclusion)**

112.    With respect to Paragraph 112 of the Complaint, Defendant Weinstein realleges and incorporates by reference his responses to Paragraphs 1 to 111 of this First Amended Answer and Counterclaim.

113.    With respect to Paragraph 113 of the Complaint, Defendant Weinstein notes that the policies referenced in the Complaint are not attached to the operative pleading and, therefore,

Defendant is without knowledge or information sufficient to admit or deny the allegations set forth therein.

114.    With respect to the Paragraph 114 of the Complaint, Defendant Weinstein admits to the existence of the Underlying Lawsuits and their attendant allegations.  As to the Underlying Lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

115.    With respect to Paragraph 115 of the Complaint, Plaintiffs' stated position is a legal conclusion and is hereby denied by Defendant Weinstein.

## COUNT IX

### (Declaratory Judgment – Defense and Indemnity Coverage Is Precluded Under Certain Policies by the Sexual Molestation Exclusion)

116.    With respect to Paragraph 116 of the Complaint, Defendant Weinstein realleges and incorporates by reference his responses to Paragraphs 1 to 115 of this First Amended Answer and Counterclaim.

117.    With respect to Paragraph 117 of the Complaint, Defendant Weinstein notes that the policies referenced in the Complaint are not attached to the operative pleading and, therefore, Defendant is without knowledge or information sufficient to admit or deny the allegations set forth therein.

118.    With respect to the Paragraph 118 of the Complaint, Defendant Weinstein admits to the existence of the Underlying Lawsuits and their attendant allegations.  As to the Underlying Lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

119.    With respect to Paragraph 119 of the Complaint, Plaintiffs' stated position is a legal conclusion and is hereby denied by Defendant Weinstein.

## COUNT X

**(Declaratory Judgment – Defense and Indemnity Coverage Is Precluded Under the Policies by the Director's Liability Exclusion)**

120.     With respect to Paragraph 120 of the Complaint, Defendant Weinstein realleges and incorporates by reference his responses to Paragraphs 1 to 119 of this First Amended Answer and Counterclaim.

121.     With respect to Paragraph 121 of the Complaint, Defendant Weinstein notes that the policies referenced in the Complaint are not attached to the operative pleading and, therefore, Defendant is without knowledge or information sufficient to admit or deny the allegations set forth therein.

122.     With respect to the Paragraph 122 of the Complaint, Defendant Weinstein admits to the existence of the Underlying Lawsuits and their attendant allegations.  As to the Underlying Lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

123.     With respect to Paragraph 123 of the Complaint, Plaintiffs' stated position is a legal conclusion and is hereby denied by Defendant Weinstein.

## COUNT XI

**(Declaratory Judgment – Defense and Indemnity Coverage Is Precluded Under the Policies by the Business Pursuits Exclusion)**

124.     With respect to Paragraph 124 of the Complaint, Defendant Weinstein realleges and incorporates by reference his responses to Paragraphs 1 to 123 of this First Amended Answer and Counterclaim.

125.     With respect to Paragraph 125 of the Complaint, Defendant Weinstein notes that the policies referenced in the Complaint are not attached to the operative pleading and, therefore,

Defendant is without knowledge or information sufficient to admit or deny the allegations set forth therein.

126.     With respect to the Paragraph 126 of the Complaint, Defendant Weinstein admits to the existence of the Underlying Lawsuits and their attendant allegations.  As to the Underlying Lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

127.     With respect to Paragraph 127 of the Complaint, Plaintiffs' stated position is a legal conclusion and is hereby denied by Defendant Weinstein.

## COUNT XII

**(Declaratory Judgment – Defense and Indemnity Coverage Is Precluded Under The Policies By The Discrimination Exclusion)**

128.     With respect to Paragraph 128 of the Complaint, Defendant Weinstein realleges and incorporates by reference his responses to Paragraphs 1 to 127 of this First Amended Answer and Counterclaim.

129.     With respect to Paragraph 129 of the Complaint, Defendant Weinstein notes that the policies referenced in the Complaint are not attached to the operative pleading and, therefore, Defendant is without knowledge or information sufficient to admit or deny the allegations set forth therein.

130.     With respect to the Paragraph 130 of the Complaint, Defendant Weinstein admits to the existence of the Underlying Lawsuits and their attendant allegations.  As to the Underlying Lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

131.     With respect to Paragraph 131 of the Complaint, Plaintiffs' stated position is a legal conclusion and is hereby denied by Defendant Weinstein.

27

## COUNT XIII

### (Declaratory Relief – Coverage Is Precluded by Public Policy)

132.    With respect to Paragraph 132 of the Complaint, Defendant Weinstein realleges and incorporates by reference his responses to Paragraphs 1 to 131 of this First Amended Answer and Counterclaim.

133.    With respect to Paragraph 133 of the Complaint, Plaintiffs purport to set forth a statement of public policy which is hereby denied by Defendant Weinstein.

134.    With respect to the Paragraph 134 of the Complaint, Defendant Weinstein admits to the existence of the Underlying Lawsuits and their attendant allegations.  As to the Underlying Lawsuit's contentions and/or Plaintiffs' characterizations thereof, Defendant Weinstein denies all such allegations and/or characterizations.

135.    With respect to Paragraph 135 of the Complaint, Plaintiffs' stated position is a legal conclusion and is hereby denied by Defendant Weinstein.

### AFFIRMATIVE DEFENSES

Defendant Weinstein raises the following affirmative defenses to each and every cause of action asserted against him.  Defendant Weinstein hereby alleges the following affirmative defenses without assuming the burden of proof for such where the burden is, by law, upon Plaintiffs.

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Plaintiffs' Complaint, and each and every claim therein, in whole or in part, fails to state facts sufficient to constitute a claim or cause of action against Defendant Weinstein.

## SECOND AFFIRMATIVE DEFENSE
### (Waiver and Estoppel)

Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs have waived their

right to assert, or are estopped from asserting, those claims.

## THIRD AFFIRMATIVE DEFENSE
### (Unclean Hands)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE
### (Misrepresentation of Coverage)

Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs have

misrepresented coverage and/or the nature of their obligations owing to Defendant Weinstein.

## FIFTH AFFIRMATIVE DEFENSE
### (Bad Faith)

Plaintiffs' claims are barred, in whole or in part, by the covenant of good faith and fair

dealing.

## SIXTH AFFIRMATIVE DEFENSE
### (Preservation of other Affirmative Defenses)

Defendant Weinstein reserves the right to amend and/or supplement this First Amended

Answer and Counterclaim and to assert any and all additional, pertinent defenses ascertained

through investigation and discovery in this action.

## COUNTERCLAIM

Defendant Harvey Weinstein brings this Counterclaim against Plaintiffs and Counter-Defendants, Federal Insurance Company, Chubb Indemnity Insurance Company, Vigilant Insurance Company, Pacific Indemnity Insurance Company, and Great Northern Insurance Company and DOES 1-10, inclusive (the "Chubb Insurers") by alleging as follows:

## INTRODUCTION

1.      This Counterclaim is a direct response to the Chubb Insurers' hastily-filed lawsuit, aimed at evading their contractual duty to defend Mr. Weinstein against a series of potentially ruinous lawsuits pending in New York and elsewhere.

2.      Over the course of nearly 25 years, Mr. Weinstein and his family, *and* the company he co-founded (The Weinstein Company), paid the Chubb Insurers more than a million dollars for insurance coverage designed to protect them against a wide variety of liability claims. Throughout that entire time, the Chubb Insurers eagerly accepted premiums in exchange for primary policies, excess policies, and umbrella policies, all including Mr. Weinstein as a beneficiary of their protections.  According to their policies, the Chubb Insurers had both the right and duty to defend Mr. Weinstein – at their expense – if liability claims were ever asserted against him; moreover, they promised to perform their defense obligations even if allegations against Mr. Weinstein proved to be groundless, false or fraudulent.  Further, at least one policy promised to provide Mr. Weinstein with $300,000 in "crisis assistance" benefits in the event he faced a situation involving "significant adverse regional or national media coverage."

3.      Or so they said.

4.      In December 2017, Mr. Weinstein presented the Chubb Insurers with a series of highly-publicized, personal injury lawsuits that triggered the Chubb Insurers' defense and crisis

assistance obligations.  But rather than provide the protection he purchased, the Chubb Insurers balked.  Abandoning any pretense of analysis, the Chubb Insurers responded to Mr. Weinstein's tenders by churning-out a series of form letters that improperly denied his claims.  So flimsy were the insurer's denials that they failed to base their decision on the terms of any specific policy and/or the language of any particular form.  According to the Chubb Insurers, their policies were substantively similar, their exclusions uniform throughout, and Mr. Weinstein's requests for a defense unworthy of detailed consideration. *Ergo*, no coverage.  Worse yet, the insurers' cursory denials consciously concealed the existence of policies that lacked the insurers' cited exclusions, as well as policies that affirmatively extended defense benefits to Mr. Weinstein.

5.     When Mr. Weinstein brought these lapses to the insurers' attention, no substantive response was provided.  Instead, the Chubb Insurers sued.  Opting to avoid any candid discussion of coverage, they ran to court, they filed their lawsuit for non-coverage, and, as before, they supported their position without discussing specific policies or terms that actually applied to (and provided coverage for) Mr. Weinstein's claims.

6.     The time for such gamesmanship has ended.  By this Counterclaim, Mr. Weinstein seeks to hold the Chubb Insurers accountable for their wrongs, to force the insurers to provide bargained-for policy benefits, and to pay other damages for their bad faith conduct.

## **THE PARTIES**

7.     Counterclaimant Harvey Weinstein is a citizen of the State of Connecticut. During the approximate period 1993-2018, Mr. Weinstein and/or his current and prior spouses, owned and/or rented various properties in Connecticut, New York, New Jersey, California,

London and France which were insured by one of more or the Chubb Insurers, providing coverage for both first-party property and third-party liability risks.

8.      Plaintiff and Counter-Defendant Federal Insurance Company ("Federal") is an Indiana corporation who, in its accompanying complaint, alleges that its principal place of business is located in New Jersey.

9.      Plaintiff and Counter-Defendant Chubb Indemnity Insurance Company ("Chubb Indemnity") is a New York corporation who, in its accompanying complaint, alleges that its principal place of business is located in New Jersey although, according to the New York Insurance Department's website, Chubb Indemnity's business address is listed as 1133 Avenue of the Americas, New York, New York.

10.      Plaintiff and Counter-Defendant Vigilant Insurance Company ("Vigilant") is a New York corporation who, in its accompanying complaint, alleges that its principal place of business is located in New Jersey although, according to the New York Insurance Department's website, Vigilant's business address is listed as 1133 Avenue of the Americas, New York, New York.

11.      Plaintiff and Counter-Defendant Pacific Indemnity Company ("Pacific Indemnity") is a Wisconsin corporation who, in its accompanying complaint, alleges that its principal place of business is located in New Jersey.

12.      Plaintiff and Counter-Defendant Great Northern Insurance Company ("Great Northern") is an Indiana corporation who, in its accompanying complaint, alleges that its principal place of business is located in New Jersey.

13.      Counterclaimant Weinstein does not know the true names and capacities, whether individual, associate, corporate or otherwise of Counter-Defendants DOES 1 through 10,

inclusive, and, therefore, he sues these DOE Counter-Defendants by such fictitious names and

will amend this counterclaim to show their true names and capacities when the same are

ascertained. Counterclaimant Weinstein is informed and believes, and based thereupon alleges,

that Counter-defendants DOES 1 through 10, inclusive, were in some manner responsible or

legally liable for the events, actions, transactions, and circumstances alleged herein.

## JURISICTION AND VENUE

14.    This Counterclaim has an independent basis of jurisdiction based on complete

diversity of the parties, and because the amount in controversy set forth in this Counterclaim

exceeds $75,000, exclusive of costs. See 28 U.S.C. § 1332.

15.    Venue for this Counterclaim is proper because a substantial part of the events or

omissions giving rise to Mr. Weinstein's claims against Counter-Defendants occurred within the

Southern District of New York. See 28 U.S.C. § 1339(a)(2).

## GENERAL ALLEGATIONS

### *Harvey Weinstein and his Insurance Program*

16.    Counterclaimant Harvey Weinstein is an internationally-known producer of such

award winning films as Shakespeare in Love, Pulp Fiction, and The King's Speech. In 2005,

Mr. Weinstein and his brother co-founded The Weinstein Company ("TWC"), where he served

as co-chairman and co-CEO until his termination in November 2017.

#### Mr. Weinstein's Personal Insurance

17.    As a matter of prudence and responsibility, Mr. Weinstein maintained a

comprehensive risk management program aimed at protecting himself, his family, and their

assets against unanticipated losses. In particular, for the time period 1994-2018, Mr. Weinstein

maintained primary, excess, and umbrella insurance issued by the Chubb Insurers. Over that 24

year period, at least 19 different policies of insurance were purchased, costing Mr. Weinstein

more than $1.2MM in premiums (the "Chubb Personal Policies").[1]  Most of these policies were so-called "Masterpiece" policies, a trademark registered by the Chubb Insurers to connote their premier, top-of-the-line coverage marketed to high-net-worth individuals like Mr. Weinstein. Each of the Chubb Personal Policies are identified on Attachment A, and incorporated herein by reference.[2]

18.     By their terms, the Chubb Personal Policies obligated the insurers to defend Mr. Weinstein against claims for "damages" asserted against him for "personal injury" caused by an "occurrence."  Each of those terms was, in turn, defined in the relevant policies as follows:

(i)     *"Damages"* are defined in the policies to mean simply sums paid or payable for an injury.

(ii)     *"Personal Injury"* is defined, in relevant part, in the majority of the policies to mean any of "the following injuries":  "bodily injury; shock, mental anguish or mental injury; false imprisonment; humiliation; defamation of character; invasion of privacy."

(iii)     *"Occurrence"* is defined in the majority of the policies to mean "an accident or offense," and, for its part, the term "offense" is not defined anywhere in the policies.  In its ordinary sense, though, an "offense" is commonly understood to mean "a

---

[1] Mr. Weinstein was informed by Chubb on May 2, 2018 that it had discovered several *additional* policies issued to Mr. Weinstein and his family, but these policies have yet been provided to Mr. Weinstein.

[2] For reasons of space, only the relevant liability sections of the Chubb Personal Policies are attached to this pleading as Exhibits 1-19.  Mr. Weinstein's personal information has been redacted.  The complete policies can (and will) be made available to the parties and Court upon request.  That said, the existence and contents of the Chubb Personal Policies are well-known to the Chubb Insurers, as they previously provided Mr. Weinstein with (what they claimed were) "certified copies" of each referenced policy.

violation or breaking of a social or moral rule; transgression; sin," "a transgression or law; misdemeanor" or, in the context of an insurance policy, a tort.[3]

Although each of the Chubb Personal Policies contained various exclusions, by their terms they only preclude coverage for *indemnity* payments, and do not relieve the Chubb Insurers of their duty to pay for their insureds' defense.

<u>Mr. Weinstein's Corporate Coverage</u>

19.    As a further means of protection, Mr. Weinstein ensured that his company also procured necessary insurance to protect persons and property against unanticipated losses.  For the time period April 7, 2016 to April 7, 2018, The Weinstein Company purchased primary, excess and umbrella general liability insurance from Chubb.  In particular, Chubb issued primary policy No. 7996-73-58 for the two successive, one-year periods during this time, with annual limits of $2MM (the "Chubb Primary Policies").[4]  For the same time period, Chubb issued two successive policies with policy number 7996-73-60, containing excess and umbrella coverage in the amount of $15MM ("Chubb Umbrella Policies").[5]  The Chubb Primary Policies and Chubb Umbrella Policies are collectively referred to herein as the "Chubb TWC Policies."

20.    The Chubb Primary Policies obligated the Chubb Insurers to defend Mr. Weinstein against a "suit" seeking damages for "personal injury."  For its part, the term "personal injury" is defined, in part, to mean "injury … caused by an offense of … false imprisonment."

---

[3] See http://www.dictionary.com/browse/offense; see also Atlantic Cas. Ins. Co. v. GTL, Inc. 915 F. Supp. 2d 1169, 1175 (D. Mont. 2013) ("a reasonable person in the position of an insured could not help but understand the term 'offense' to mean a breach of moral or social conduct."); Am. Guar. & Liab. Ins. Co. v. 1906 Co., 273 F.3d 605, 617 (5th Cir. 2001) ("The ordinary meaning of 'offense' is 'a breach of moral or social code' or 'an infraction of law.")

[4] The relevant liability sections of the Chubb Primary Policies are attached to this pleading as Exhibits 20 and 22.

[5] The relevant liability sections of the Chubb Umbrella Policies are attached to this pleading as Exhibits 21 and 23.

21.     The Chubb Umbrella Policies obligated the Chubb Insurers to defend Mr.
Weinstein against a "suit" seeking damages for "personal injury."  For its part, the term
"personal injury" is defined, in part, to mean "injury … caused by an offense of … false
imprisonment" or "discrimination, harassment or segregation based on a person's protected
human characteristics as established by law."

22.     In addition, the Chubb Umbrella Policies contain $300,000 of "crisis assistance"
coverage, which provides coverage in addition to policy's $15MM limits.  That coverage states
that Chubb will pay on behalf of an insured "crisis assistance expenses … arising out of a crisis
event."  The term "crisis assistance expenses" is defined, in relevant part, to mean "expenses
incurred by an insured during a crisis event," including psychological counseling expenses and
temporary living expenses.  For its part, the term "crisis event" is broadly defined to mean (1)
"an event that you [the insured] reasonably believe has resulted, or may result in damages
covered by the policy that are in excess of" other insurance; and (2) has "significant adverse
regional or national media coverage."

23.     The fundamental purpose of the broad personal injury and crisis assistance
coverages in the Chubb Personal Policies and the Chubb TWC Policies – whether considered
singly or collectively – was to provide Mr. Weinstein (and others) with resources to both defend
and, if necessary, to indemnify, themselves against liabilities alleged by way of legal actions,
arbitrations or otherwise.  By their terms, the defense obligations found in the Chubb Personal
Policies and Chubb TWC Policies were "unlimited," obligating the Chubb Insurers to fund all
reasonable and necessary attorneys' fees, defense expenditures and costs irrespective of the
relevant policies' indemnity limit.

### *The Underlying Lawsuits*

24.     On October 5, 2017, The New York Times ran a front page story, detailing a series of salacious accusations against Mr. Weinstein, "including sexual harassment and unwanted physical contact" targeting TWC employees, as well as current and aspiring actresses. See J. Kantor & M. Twohey, "*Harvey Weinstein Paid Off Sexual Harassment Accusers for Decades*," The New York Times, Oct. 5 2017.  Several days later newyorker.com posted similar allegations, in a digital version of a forthcoming magazine story by Ronan Farrow, "*From Aggressive Overtures to Sexual Assault:  Harvey Weinstein's Accusers Tell Their Stories*." The NewYorker, Oct. 23, 2017.

25.     Almost overnight, Mr. Weinstein became a pariah.  His denials of liability became background noise, lost in the international uproar that followed.

26.     Within hours of The New York Times story, Mr. Weinstein was fired from his post as co-chairman and co-CEO of TWC.  For its part, Hollywood quickly turned its back on Mr. Weinstein.  On October 14, 2017, Mr. Weinstein was expelled from the Motion Picture Academy of Arts and Sciences, and the entertainment industry's trade publication, Variety, promptly published its own story asking (rhetorically) "*Is Harvey Weinstein Done in Hollywood?"* B. Lang, Variety, Oct. 5, 2017 ("Harvey Weinstein's career in Hollywood is likely over . . . . [H]is ostracization will likely come from the creative community . . . . his brand is toxic.").

27.     Through it all, Mr. Weinstein maintained his innocence.  Both in person, and through spokespeople, allegations of any intentional wrongdoing were consistently denied by Mr. Weinstein.  See e.g., D. Victor, "*How the Harvey Weinstein Story Has Unfolded*," The New York Times, Oct. 18, 2017 (Weinstein's "spokeswoman, Sallie Hofmeister, said: 'Any

allegations of non-consensual sex are unequivocally denied by Mr. Weinstein.  Mr. Weinstein

has further confirmed that there were never any acts of retaliation against any women for

refusing his advances.'"").

28.     Mr. Weinstein's protestations aside, lawsuits quickly followed.  Between October

5, 2017 and the present day, nearly a dozen different legal actions were filed against

Mr. Weinstein asserting his improper conduct and/or systemic violations of individuals' rights

(the "Underlying Lawsuits").  Each of the Underlying Lawsuit's particular allegations – and the

bases for coverage thereof – are discussed more fully below:

       (i)     <u>People v. The Weinstein Company, et al.</u>, New York State Supreme Court

Index #450293-2018 (the "NY-AG Action"):  The NY-AG Action alleges that during the

period 2005-2017, Mr. Weinstein engaged in various forms of sexual discrimination,

harassment, and misconduct, with regard to employees of The Weinstein Company and

third parties.  <u>See</u> Exhibit 24 (Complaint at ¶¶ 1, 20, 22-61).  The action seeks an order

directing Mr. Weinstein and other defendants to "pay restitution and damages in the

amount of the harm to the victims of [their] illegal conduct in connection with its hostile

workplace environment and sexual harassment of women."  <u>See id.</u> (Complaint at Prayer

for Relief, ¶ 3). Given these allegations, there can be no doubt that coverage exists under

the Chubb Personal Policies' insuring agreement:  The complaint alleges that the victims

suffered personal injuries. For example, the Complaint avers one former TWC employee

as "traumatized" by Mr. Weinstein, and that such injuries are the result of "offenses" by

Mr. Weinstein, *i.e.*, his alleged sexual discrimination and harassment, and sexual

misconduct.  <u>See id.</u> (Complaint at ¶ 42).  For these and other reasons, coverage also

exists under the Chubb TWC Policies' personal injury coverage.

(ii)    <u>Geiss, et al. v. Weinstein, et al.</u>, United States District Court, Southern District of New York, Case No. 17-cv-0954 (the "Geiss Action"):  The Geiss Action was brought on behalf of several claimants as a purported class action.  Each claimant bases her claims on distinct allegations involving different time periods.  For example, Katherine Kendall alleges, among other things, that during the summer of 2017, Mr. Weinstein caused someone to target her for surveillance and investigation based on a suspicion that she might accuse him of sexual misconduct (the "2017 Kendall Incident").  <u>See</u> Exhibit 25 (Complaint at ¶¶ 62-69).  Nanette Klatt does not allege that Mr. Weinstein touched her.  Rather, the Complaint alleges that during a meeting with Mr. Weinstein in his private office, he asked her to expose her breasts.  <u>See id.</u> (Complaint at ¶ 117).  When she refused, he told her to leave his office through a side door that led into a stairwell and locked the door behind her.  <u>See id.</u> (Complaint at ¶ 119).  She alleges that she was confined in the stairwell until she was discovered by a maintenance worker and released (the "Klatt Incident").  <u>See id.</u> (Complaint at ¶¶ 117-119).  Ms. Kendall and Ms. Klatt each allege that she suffered emotional distress as a result of the referenced incidents.  Given these allegations and others, there can be no doubt that coverage exists under the Chubb Personal Policies' insuring agreement.  As to the 2017 Kendall Incident, the claimant there expressly alleges that she suffered emotional distress (<i>i.e.</i>, "personal injury") caused by Mr. Weinstein's alleged misconduct in targeting her for surveillance and investigation.  <u>See id.</u> (Complaint at ¶ 70).  This alleged conduct undeniably constitutes an "offense," as that policy term will be understood and interpreted, <i>i.e.</i>, the "breaking of social or moral rules" or "transgressions of the law."  As to the Klatt Incident, Ms. Klatt alleges that she suffered "distress and emotional harm" as a result of

Mr. Weinstein allegedly locking her in a dark stairwell.  See id. (Complaint at ¶119) (i.e., an "offense").  For these and other reasons, coverage also exists under the Chubb TWC Policies' personal injury coverage.

      (iii)    Noble v. Weinstein, et al., United States District Court, Southern District of New York, Case No. 17-cv-9260 (the "Noble Action"):  The Noble Action seeks damages based on a purported violation of a federal criminal statute prohibiting sex trafficking.  In this regard, Ms. Noble asserts that in February, 2014 she engaged in a commercial sex act based on a series of non-sexual inducements Mr. Weinstein promised to her.  These included Ms. Noble's belief that Mr. Weinstein would offer her a role in one of his projects, and that he would exercise his influence in the entertainment business on her behalf.  See Exhibit 26 (Complaint at ¶¶ 31-32).  Based on plaintiff's desire to obtain these career-enhancing benefits, Ms. Noble repeatedly asserts she "felt compelled" to submit to Mr. Weinstein's overtures. See id. (Complaint at ¶¶ 19, 33).  Critically, Ms. Noble does not contend, among her actionable claims, that Mr. Weinstein molested her or that he abused her sexually.  Rather, Ms. Noble claims that the personal injuries she suffered (emotional distress, mental anguish, shame and humiliation) all stemmed from Mr. Weinstein's use of "force, fraud, or coercion" to obtain her submission.  See id. (Complaint at ¶¶ 37-47). Given these allegations, there can be no doubt that coverage exists under the Chubb Personal Policies' insuring agreement:  Ms. Noble claims that she suffered personal injuries (emotional distress, mental anguish, shame and humiliation) as a result of Mr. Weinstein's use of "force, fraud, or coercion" to obtain her submission (i.e., the relevant "offense").  For these and other reasons, coverage also exists under the Chubb TWC Policies' personal injury coverage.

(iv)    <u>Rehal v. Weinstein, et al.</u>, Supreme Court of the State of New York, Index No. 151738/2018 (the "Rehal Action"): The Rehal Action alleges that Plaintiff was a personal assistant to Mr. Weinstein from February, 2013 through February, 2015.  During that time, Plaintiff alleges, among other things, that she was subjected to sexual discrimination and sexual harassment, including the following:  being forced to work with Mr. Weinstein while he was nude, unwanted touching by Mr. Weinstein, and Mr. Weinstein's use of sexist language and comments on her appearance.  <u>See</u> Exhibit 27 (Complaint at ¶¶ 12-22, 32).  As a result of this alleged misconduct, Plaintiff alleges that she suffered the following injuries: "severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering."  <u>See</u> <u>id.</u> (Complaint at ¶ 37).  Given these allegations, there can be no doubt that coverage exists under the Chubb Personal Policies' insuring agreement:  Plaintiff expressly alleges that she has suffered personal injuries (*i.e.*, "severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering"), and that such injuries are the result of "offenses" by Mr. Weinstein (*i.e.*, his alleged sexual discrimination and sexual harassment).  For these and other reasons, coverage also exists under the Chubb TWC Policies' personal injury coverage.

(v)    <u>Canosa v. The Weinstein Company, et al.</u>, New York State Supreme Court Index No. 161254/2017 (the "Canosa Action"):  The Canosa Action alleges that Mr. Weinstein, "over a period of years through 2017," "threatened Plaintiff and made it clear that if she did not succumb to his demands or if she exposed his unwanted conduct

there would be retaliation, including humiliation, the loss of her job and any ability to work in the entertainment business." See Exhibit 28 (Complaint at p. 8). It further alleges that Plaintiff suffered "substantial physical injury, pain, suffering, humiliation, mental anguish, and emotional distress" as a result of Mr. Weinstein's alleged unlawful conduct. Id. at p. 37. Given these allegations, coverage exists under the Chubb Personal Policies' insuring agreement: Ms. Canosa claims that she suffered personal injuries ("substantial physical injury, pain, suffering, humiliation, mental anguish, and emotional distress") as a result of Mr. Weinstein's alleged improper demands and threats *(i.e.*, the relevant "offense"). For these and other reasons, coverage also exists under the Chubb TWC Policies' personal injury coverage.

(vi)    ABC v. Weinstein, et al., High Court of Justice, London, England, Queen's Bench Division, Case No. HQ17-P-04249 (the "ABC Action"): The ABC Action alleges that, as part of her job, Plaintiff was required to visit Mr. Weinstein's bedroom at a London hotel to pick up his clothes. See Exhibit 29 (Particulars of Claim at ¶ 6). Once there, Plaintiff alleges Mr. Weinstein invited her to shower with him and, when she refused, he stood naked in front of her and masturbated. Id. Thereafter, Plaintiff alleges unspecified sexual "assaults" on several separate occasions. Id. As a result of these alleged incidents, Plaintiff alleges that she suffered the following injuries, among others: physical pain and suffering, including feelings of embarrassment and shame; psychiatric damage; and trauma and humiliation. See id. (Particulars of Claim at ¶ 8). Given these allegations, coverage exists under the Chubb Personal Policies' insuring agreement: Plaintiff expressly alleges that she has suffered personal injuries (*i.e.*, physical pain and suffering, including feelings of embarrassment and shame; psychiatric damage; and

trauma and humiliation), and that such injuries are the result of offenses by Mr. Weinstein. For these and other reasons, coverage also exists under the Chubb TWC Policies' personal injury coverage.

(vii)   Ackers v. Weinstein, et al., Los Angeles Superior Court, Case No. BC681850 (the "Ackers Action"): The Ackers Action seeks damages as a result of an alleged encounter in November, 2007 in which Plaintiff purportedly agreed to meet Mr. Weinstein in his car to discuss a potential film project.  See Exhibit 30 (Complaint at p. 2).  Once in the parking garage, Plaintiff claims Mr. Weinstein grabbed his shoulders and attempted to force Plaintiff down to his crotch area.  Id.  Given these allegations, coverage exists under the Chubb Personal Policies' insuring agreement:  Mr. Ackers is seeking compensatory damages for injuries suffered as a result of Mr. Weinstein's alleged improper conduct (i.e., the relevant "offense").  For these and other reasons, coverage also exists under the Chubb TWC Policies' personal injury coverage.

(viii)   Doe v. Weinstein, et al., Ontario, Canada, Case No. CV 17-585459 (the "Doe Ontario Action"):  The Doe Ontario Action alleges that in the summer of 2000 Plaintiff agreed to meet Mr. Weinstein at his hotel for breakfast.  See Exhibit 31 (Complaint at ¶¶ 7-11).  Once in his hotel room, Plaintiff alleges that Mr. Weinstein held her down against her will and performed oral sex on her.  See id. (Complaint, ¶¶ 16-18). Plaintiff alleges that after she fled the room, she was persuaded to return after it was suggested that Mr. Weinstein wished to apologize to her.  See id. (Complaint at ¶ 25). However, Plaintiff claims that Mr. Weinstein "tried to stick his tongue down her throat" when she returned.  Id.  Thereafter, Plaintiff claims that, for approximately one year, Mr. Weinstein harassed her by repeatedly calling her to ask for further meetings.  See id.

(Complaint, ¶¶ 29-30).  As a result of these incidents, Plaintiff claims she has experienced "significant pain and suffering," including "physical pain and psychological distress," "shame," and "mental distress."  See id. (Complaint, ¶ 58). Given such allegations, coverage exists under the Chubb Personal Policies' insuring agreement: Plaintiff expressly alleges that she has suffered personal injuries ("physical pain and psychological distress," "shame," and "mental distress"), and that such injuries are the result of offenses by Mr. Weinstein.  For these and other reasons, coverage also exists under the Chubb TWC Policies' personal injury coverage.

(ix)    Doe v. Weinstein, et al., Los Angeles Superior Court, Case No. BC683411 (the "Doe California Action"): The Doe California Action alleges two separate incidents involving Mr. Weinstein.  First, plaintiff alleges that she met Mr. Weinstein at his hotel in late 2015, and that he masturbated in front of her while holding her wrist (hereinafter, the "2015 Incident").  See Exhibit 32 (Complaint, ¶14).  She further alleges that in the spring of 2016, when she again met Mr. Weinstein at his hotel room, he forcefully threw her on the bed and started to orally copulate her over her objection, and then had forcible intercourse with her (Complaint, ¶15) (hereinafter, the "2016 Incident").  As a result of these alleged incidents, Ms. Doe alleges that she suffered the following injuries: "physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, and economic harm."  See id. (Complaint, ¶22).  Given these allegations, coverage exists under the Chubb Personal Policies' insuring agreement: As to both the 2015 Incident and the 2016 Incident, Plaintiff expressly alleges that she suffered physical injury, emotional injury, and humiliation (i.e., "personal injury"), all caused by Mr. Weinstein's alleged offenses (i.e., the "breaking of social or moral rules"

or "transgressions of the law").  For these and other reasons, coverage also exists under the Chubb TWC Policies' personal injury coverage.

(x)   <u>Huett v. The Weinstein Company, et al.</u>, Los Angeles Superior Court, Case No. BC680869 (the "Huett Action"): The Huett Action brings a single claim for sex trafficking against Mr. Weinstein.  <u>See</u> Exhibit 33.  Ms. Huett alleges that in November, 2010, she agreed to meet Mr. Weinstein in his hotel room.  Once there, she alleges that Mr. Weinstein coerced her into giving him a massage and allowing him to perform oral sex on her because he "assured her that he would provide her participation and a role in an entertainment project." <u>See id.</u> (Complaint, ¶¶ 15-16, 40-46).  As a result of this alleged incident, Plaintiff alleges that she suffered the following injuries, among others: "emotional distress, pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, inability to lead a normal life, shame and humiliation." <u>See id.</u> (Complaint, ¶ 22). Given these allegations, coverage exists under the Chubb Personal Policies' insuring agreement:  Plaintiff expressly alleges that she has suffered personal injuries (*i.e.*, "emotional distress, pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, inability to lead a normal life, shame and humiliation"), and that such injuries are the result of an "offense" by Mr. Weinstein (*i.e.*, his promise of career-enhancing benefits in exchange for physical/sexual contact).  For these and other reasons, coverage also exists under the Chubb TWC Policies' personal injury coverage.

### *Mr. Weinstein's Tenders and the Chubb Insurers' Denials*

29.   Besieged by litigation and exiled from TWC, Mr. Weinstein promptly notified the Chubb Insurers of each Underlying Lawsuit.  In addition, he notified them that, collectively, the

filing of the Underlying Lawsuits, coupled with the unrelenting adverse media coverage attendant thereto, constituted a "crisis event" under the terms of the Chubb TWC Policies. Relying upon the promises contained in the various insurers' policies, Mr. Weinstein sought to avail himself of the protections that he had personally purchased from the Chubb Insurers, as well as those purchased through his company.

30. In response, the Chubb Insurers put forward an elaborate ruse, feigning compliance with their coverage obligations while, at the same time, completely avoiding any type of reasoned analysis. To accomplish this, the Chubb Insurers issued a series of (lengthy) denial letters for each separate lawsuit. Each letter, in turn, recited carefully-selected allegations from each lawsuit, designed to intersect with exclusions found only in a certain number of policies. Notably, the denial letters do <u>not</u> rely on terms of any particular policy. Instead, the letters make reference to "general" terms that were allegedly shared among the select group of policies and which, according to the Chubb Insurers, "var[ied] slightly, but immaterially" in their "operative terms." Completely ignored in the insurers' carefully-scripted, insurance kabuki were: (i) Chubb policies which lacked the referenced exclusions; (ii) covered allegations in the Underlying Lawsuits that didn't run afoul of policy exclusions in the insurers' chosen policies (e.g., allegations of false imprisonment and invasion of privacy) and (iii) Mr. Weinstein's repeated denials of liability. Unsurprisingly, the Chubb Insurers made no effort to defend this gamesmanship. Upon receipt of Mr. Weinstein's initial coverage challenge – discussing, in detail, covered allegations in the Doe California Action – the Chubb Insurers fled. They declined to respond in any substantive way and, instead, rushed to file this lawsuit.

31. Since then, little has changed. As set forth more fully in Mr. Weinstein's First Amended Answer and this Counterclaim, the Chubb Insurers' lawsuit seeks to evade coverage

by ignoring *specific* policies' coverage language, *particular* lawsuits' covered allegations, and the undeniable fact that the insurers alone bears the heavy burdens of proof and persuasion on each exclusion relied upon to bar (or limit) Mr. Weinstein's right to coverage.

32.     Time has now run out.  By this action, Mr. Weinstein seeks to force the Chubb Insurers to do what they have refused to do voluntarily:  Honor their contractual obligations and to accept responsibility for the ongoing damage they have caused Mr. Weinstein by their improper and systemic efforts to avoid coverage.

**FIRST CAUSE OF ACTION**

**(Breach of Contract by the Chubb Insurers and DOES 1 through 10 – Duty to Defend)**

**(NY-AG Action)**

33.     Mr. Weinstein incorporates the allegations of Paragraphs 1 through 32 of this Counterclaim, as though fully set forth herein anew.

34.     Mr. Weinstein, directly, and through his broker and/or attorneys, timely tendered the NY-AG Action to the Chubb Insurers.

35.     The NY-AG Action made allegations and/or sought damages which were within the coverages provided to Mr. Weinstein under the Chubb Personal Policies and Chubb TWC Policies.

36.     Notwithstanding the terms and conditions of the Chubb Personal Policies and Chubb TWC Policies, the Chubb Insurers responded to Mr. Weinstein's tender by wrongfully denying him a defense to the NY-AG Action.

37.     Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of the Chubb Personal Policies and Chubb TWC Policies are not exhausted and, in all events, were

not exhausted at the time Mr. Weinstein requested that Chubb defend him from the NY-AG Action.

38.     Mr. Weinstein has performed each and every material obligation imposed upon him by the Chubb Personal Policies and Chubb TWC Policies, except to the extent such performance was either prevented or excused by the Chubb Insurers.

39.     By refusing to defend Mr. Weinstein in response to the NY-AG Action, the Chubb Insurers have breached their duty to defend in the Chubb Personal Policies and the Chubb TWC Policies.

40.     As a direct and proximate result of the Chubb Insurers' breaches, Mr. Weinstein has suffered damages in such amounts as will be proven at the trial of this Counterclaim.

## SECOND CAUSE OF ACTION

**(Breach of Contract by the Chubb Insurers and DOES 1 through 10 – Duty to Defend)**

**(Geiss Action)**

41.     Mr. Weinstein incorporates the allegations of Paragraphs 1 through 40 of this Counterclaim, as though fully set forth herein anew.

42.     Mr. Weinstein, directly, and through his broker and/or attorneys, timely tendered the Geiss Action to the Chubb Insurers.

43.     The Geiss Action made allegations and/or sought damages which were within the coverages provided to Mr. Weinstein under the Chubb Personal Policies and Chubb TWC Policies.

44.     Notwithstanding the terms and conditions of the Chubb Personal Policies and Chubb TWC Policies, the Chubb Insurers responded to Mr. Weinstein's tender by wrongfully denying him a defense to the Geiss Action.

45.     Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of the Chubb Personal Policies and Chubb TWC Policies are not exhausted and, in all events, were not exhausted at the time Mr. Weinstein requested that Chubb defend him from the Geiss Action.

46.     Mr. Weinstein has performed each and every material obligation imposed upon him by the Chubb Personal Policies and Chubb TWC Policies, except to the extent such performance was either prevented or excused by the Chubb Insurers.

47.     By refusing to defend Mr. Weinstein in response to the Geiss Action, the Chubb Insurers have breached their duty to defend in the Chubb Personal Policies and the Chubb TWC Policies

48.     As a direct and proximate result of the Chubb Insurers' breaches, Mr. Weinstein has suffered damages in such amounts as will be proven at the trial of this Counterclaim.

## **THIRD CAUSE OF ACTION**

**(Breach of Contract by the Chubb Insurers and DOES 1 through 10 – Duty to Defend)**

**(Noble Action)**

49.     Mr. Weinstein incorporates the allegations of Paragraphs 1 through 48 of this Counterclaim, as though fully set forth herein anew.

50.     Mr. Weinstein, directly, and through his broker and/or attorneys, timely tendered the Noble Action to the Chubb Insurers.

51.     The Noble Action made allegations and/or sought damages which were within the coverages provided to Mr. Weinstein under the Chubb Personal Policies and Chubb TWC Policies.

52.     Notwithstanding the terms and conditions of the Chubb Personal Policies and Chubb TWC Policies, the Chubb Insurers responded to Mr. Weinstein's tender by wrongfully denying him a defense to the Noble Action.

53.     Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of the Chubb Personal Policies and Chubb TWC Policies are not exhausted and, in all events, were not exhausted at the time Mr. Weinstein requested that Chubb defend him from the Noble Action.

54.     Mr. Weinstein has performed each and every material obligation imposed upon him by the Chubb Personal Policies and Chubb TWC Policies, except to the extent such performance was either prevented or excused by the Chubb Insurers.

55.     By refusing to defend Mr. Weinstein in response to the Noble Action, the Chubb Insurers have breached their duty to defend in the Chubb Personal Policies and the Chubb TWC Policies.

56.     As a direct and proximate result of the Chubb Insurers' breaches, Mr. Weinstein has suffered damages in such amounts as will be proven at the trial of this Counterclaim.

## FOURTH CAUSE OF ACTION

**(Breach of Contract by the Chubb Insurers and DOES 1 through 10 – Duty to Defend)**

**(Rehal Action)**

57.     Mr. Weinstein incorporates the allegations of Paragraphs 1 through 56 of this Counterclaim, as though fully set forth herein anew.

58.     Mr. Weinstein, directly, and through his broker and/or attorneys, timely tendered the Rehal Action to the Chubb Insurers.

59.     The Rehal Action made allegations and/or sought damages which were within the coverages provided to Mr. Weinstein under the Chubb Personal Policies and Chubb TWC Policies.

60.     Notwithstanding the terms and conditions of the Chubb Personal Policies and Chubb TWC Policies, the Chubb Insurers responded to Mr. Weinstein's tender by wrongfully denying him a defense to the Rehal Action.

61.     Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of the Chubb Personal Policies and Chubb TWC Policies are not exhausted and, in all events, were not exhausted at the time Mr. Weinstein requested that Chubb defend him from the Rehal Action.

62.     Mr. Weinstein has performed each and every material obligation imposed upon him by the Chubb Personal Policies and Chubb TWC Policies, except to the extent such performance was either prevented or excused by the Chubb Insurers.

63.     By refusing to defend Mr. Weinstein in response to the Rehal Action, the Chubb Insurers have breached their duty to defend in the Chubb Personal Policies and the Chubb TWC Policies.

64.     As a direct and proximate result of the Chubb Insurers' breaches, Mr. Weinstein has suffered damages in such amounts as will be proven at the trial of this Counterclaim.

## FIFTH CAUSE OF ACTION

### (Breach of Contract by the Chubb Insurers and DOES 1 through 10 – Duty to Defend)

### (Canosa Action)

65.     Mr. Weinstein incorporates the allegations of Paragraphs 1 through 64 of this Counterclaim, as though fully set forth herein anew.

66.     Mr. Weinstein, directly, and through his broker and/or attorneys, timely tendered the Canosa Action to the Chubb Insurers.

67.     The Canosa Action made allegations and/or sought damages which were within the coverages provided to Mr. Weinstein under the Chubb Personal Policies and Chubb TWC Policies.

68.     Notwithstanding the terms and conditions of the Chubb Personal Policies and Chubb TWC Policies, the Chubb Insurers responded to Mr. Weinstein's tender by wrongfully denying him a defense to the Canosa Action.

69.     Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of the Chubb Personal Policies and Chubb TWC Policies are not exhausted and, in all events, were not exhausted at the time Mr. Weinstein requested that Chubb defend him from the Canosa Action.

70.     Mr. Weinstein has performed each and every material obligation imposed upon him by the Chubb Personal Policies and Chubb TWC Policies, except to the extent such performance was either prevented or excused by the Chubb Insurers.

71.     By refusing to defend Mr. Weinstein in response to the Canosa Action, the Chubb Insurers have breached their duty to defend in the Chubb Personal Policies and the Chubb TWC Policies.

72.     As a direct and proximate result of the Chubb Insurers' breaches, Mr. Weinstein has suffered damages in such amounts as will be proven at the trial of this Counterclaim.

## SIXTH CAUSE OF ACTION

**(Breach of Contract by the Chubb Insurers and DOES 1 through 10 – Duty to Defend)**

**(ABC Action)**

73.     Mr. Weinstein incorporates the allegations of Paragraphs 1 through 72 of this Counterclaim, as though fully set forth herein anew.

74.     Mr. Weinstein, directly, and through his broker and/or attorneys, timely tendered the ABC Action to the Chubb Insurers.

75.     The ABC Action made allegations and/or sought damages which were within the coverages provided to Mr. Weinstein under the Chubb Personal Policies and Chubb TWC Policies.

76.     Notwithstanding the terms and conditions of the Chubb Personal Policies and Chubb TWC Policies, the Chubb Insurers responded to Mr. Weinstein's tender by wrongfully denying him a defense to the ABC Action.

77.     Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of the Chubb Personal Policies and Chubb TWC Policies are not exhausted and, in all events, were not exhausted at the time Mr. Weinstein requested that Chubb defend him from the ABC Action.

78.     Mr. Weinstein has performed each and every material obligation imposed upon him by the Chubb Personal Policies and Chubb TWC Policies, except to the extent such performance was either prevented or excused by the Chubb Insurers.

79.     By refusing to defend Mr. Weinstein in response to the ABC Action, the Chubb Insurers have breached their duty to defend in the Chubb Personal Policies and the Chubb TWC Policies.

80.     As a direct and proximate result of the Chubb Insurers' breaches, Mr. Weinstein

has suffered damages in such amounts as will be proven at the trial of this Counterclaim.

## SEVENTH CAUSE OF ACTION

### (Breach of Contract by the Chubb Insurers and DOES 1 through 10 – Duty to Defend)

### (Ackers Action)

81.     Mr. Weinstein incorporates the allegations of Paragraphs 1 through 80 of this

Counterclaim, as though fully set forth herein anew.

82.     Mr. Weinstein, directly, and through his broker and/or attorneys, timely tendered

the Ackers Action to the Chubb Insurers.

83.     The Ackers Action made allegations and/or sought damages which were within

the coverages provided to Mr. Weinstein under the Chubb Personal Policies and Chubb TWC

Policies.

84.     Notwithstanding the terms and conditions of the Chubb Personal Policies and

Chubb TWC Policies, the Chubb Insurers responded to Mr. Weinstein's tender by wrongfully

denying him a defense to the Ackers Action.

85.     Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of

the Chubb Personal Policies and Chubb TWC Policies are not exhausted and, in all events, were

not exhausted at the time Mr. Weinstein requested that Chubb defend him from the Ackers

Action.

86.     Mr. Weinstein has performed each and every material obligation imposed upon

him by the Chubb Personal Policies and Chubb TWC Policies, except to the extent such

performance was either prevented or excused by the Chubb Insurers.

87.     By refusing to defend Mr. Weinstein in response to the Ackers Action, the Chubb Insurers have breached their duty to defend in the Chubb Personal Policies and the Chubb TWC Policies.

88.     As a direct and proximate result of the Chubb Insurers' breaches, Mr. Weinstein has suffered damages in such amounts as will be proven at the trial of this Counterclaim.

## EIGHTH CAUSE OF ACTION

### (Breach of Contract by the Chubb Insurers and DOES 1 through 10 – Duty to Defend)

### (Doe Ontario Action)

89.     Mr. Weinstein incorporates the allegations of Paragraphs 1 through 88 of this Counterclaim, as though fully set forth herein anew.

90.     Mr. Weinstein, directly, and through his broker and/or attorneys, timely tendered the Doe Ontario Action to the Chubb Insurers.

91.     The Doe Ontario Action made allegations and/or sought damages which were within the coverages provided to Mr. Weinstein under the Chubb Personal Policies and Chubb TWC Policies.

92.     Notwithstanding the terms and conditions of the Chubb Personal Policies and Chubb TWC Policies, the Chubb Insurers responded to Mr. Weinstein's tender by wrongfully denying him a defense to the Doe Ontario Action.

93.     Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of the Chubb Personal Policies and Chubb TWC Policies are not exhausted and, in all events, were not exhausted at the time Mr. Weinstein requested that Chubb defend him from the Doe Ontario Action.

94.    Mr. Weinstein has performed each and every material obligation imposed upon him by the Chubb Personal Policies and Chubb TWC Policies, except to the extent such performance was either prevented or excused by the Chubb Insurers.

95.    By refusing to defend Mr. Weinstein in response to the Doe Ontario Action, the Chubb Insurers have breached their duty to defend in the Chubb Personal Policies and the Chubb TWC Policies.

96.    As a direct and proximate result of the Chubb Insurers' breaches, Mr. Weinstein has suffered damages in such amounts as will be proven at the trial of this Counterclaim.

## NINTH CAUSE OF ACTION

**(Breach of Contract by the Chubb Insurers and DOES 1 through 10 – Duty to Defend)**

**(Doe California Action)**

97.    Mr. Weinstein incorporates the allegations of Paragraphs 1 through 96 of this Counterclaim, as though fully set forth herein anew.

98.    Mr. Weinstein, directly, and through his broker and/or attorneys, timely tendered the Doe California Action to the Chubb Insurers.

99.    The Doe California Action made allegations and/or sought damages which were within the coverages provided to Mr. Weinstein under the Chubb Personal Policies and Chubb TWC Policies.

100.    Notwithstanding the terms and conditions of the Chubb Personal Policies and Chubb TWC Policies, the Chubb Insurers responded to Mr. Weinstein's tender by wrongfully denying him a defense to the Doe California Action.

101.    Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of the Chubb Personal Policies and Chubb TWC Policies are not exhausted and, in all events, were

not exhausted at the time Mr. Weinstein requested that Chubb defend him from the Doe California Action.

102.    Mr. Weinstein has performed each and every material obligation imposed upon him by the Chubb Personal Policies and Chubb TWC Policies, except to the extent such performance was either prevented or excused by the Chubb Insurers.

103.    By refusing to defend Mr. Weinstein in response to the Doe California Action, the Chubb Insurers have breached their duty to defend in the Chubb Personal Policies and the Chubb TWC Policies.

104.    As a direct and proximate result of the Chubb Insurers' breaches, Mr. Weinstein has suffered damages in such amounts as will be proven at the trial of this Counterclaim.

## TENTH CAUSE OF ACTION

**(Breach of Contract by the Chubb Insurers and DOES 1 through 10 – Duty to Defend)**

**(Huett Action)**

105.    Mr. Weinstein incorporates the allegations of Paragraphs 1 through 104 of this Counterclaim, as though fully set forth herein anew.

106.    Mr. Weinstein, directly, and through his broker and/or attorneys, timely tendered the Huett Action to the Chubb Insurers.

107.    The Huett Action made allegations and/or sought damages which were within the coverages provided to Mr. Weinstein under the Chubb Personal Policies and Chubb TWC Policies.

108.    Notwithstanding the terms and conditions of the Chubb Personal Policies and Chubb TWC Policies, the Chubb Insurers responded to Mr. Weinstein's tender by wrongfully denying him a defense to the Huett Action.

109.    Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of the Chubb Personal Policies and Chubb TWC Policies are not exhausted and, in all events, were not exhausted at the time Mr. Weinstein requested that Chubb defend him from the Huett Action.

110.    Mr. Weinstein has performed each and every material obligation imposed upon him by the Chubb Personal Policies and Chubb TWC Policies, except to the extent such performance was either prevented or excused by the Chubb Insurers.

111.    By refusing to defend Mr. Weinstein in response to the Huett Action, the Chubb Insurers have breached their duty to defend in the Chubb Personal Policies and the Chubb TWC Policies.

112.    As a direct and proximate result of the Chubb Insurers' breaches, Mr. Weinstein has suffered damages in such amounts as will be proven at the trial of this Counterclaim.

## ELEVENTH CAUSE OF ACTION

### (Breach of Contract by Federal Insurance Company)

### (Failure to Pay Crisis Assistance Expenses)

113.    Mr. Weinstein incorporates the allegations of Paragraphs 1 through 112 of this Counterclaim, as though fully set forth herein anew.

114.    Mr. Weinstein, directly, and through his broker and/or attorneys, timely tendered the Underlying Lawsuits to Federal, gave notice that he was facing a crisis event, and requested that Federal reimburse him for and/or advance his crisis assistance expenses.

115.    The Underlying Lawsuits, coupled with the adverse national media coverage resulting therefrom, constitute a "crisis event" under the terms of the Chubb Umbrella Policies.

116.   Notwithstanding the terms and conditions of the Chubb Umbrella Policies, Federal responded to Mr. Weinstein's request for coverage for wrongfully denying him all crisis assistance expenses.

117.   Mr. Weinstein is informed and believes, and thereupon alleges, that the limits of the Chubb Umbrella Policies are not exhausted and, in all events, were not exhausted at the time Mr. Weinstein requested that Federal reimburse him for his crisis assistance expenses and/or advance crisis assistance expenses.

118.   Mr. Weinstein has performed each and every material obligation imposed upon him by the Chubb Umbrella Policies, except to the extent such performance was either prevented or excused by Federal.

119.   By refusing to provide Mr. Weinstein with crisis assistance expenses, Federal has breached the terms of the Chubb Umbrella Policies.

120.   As a direct and proximate result of Federal's breaches, Mr. Weinstein has suffered damages in such amounts as will be proven at the trial of this Counterclaim.

## TWELFTH CAUSE OF ACTION

**(Breach of the Covenant of Good Faith and Fair Dealing by the Chubb Insurers)**

121.   Mr. Weinstein incorporates the allegations of Paragraphs 1 through 120 of this Counterclaim, as though fully set forth herein anew.

122.   As set forth above, the Chubb Insurers' mishandling of Mr. Weinstein's claim for coverage of the Underlying Lawsuits bespeaks a systemic effort to wrongfully injure their insured.  Separate and apart from the Chubb Insurers wrongful denials of coverage, the insurers have refused to undertake good faith steps designed to promptly, fairly, and equitably resolve Mr. Weinstein's claims.  Among other wrongs, the Chubb Insurers sought to shirk their good

faith obligations to promptly and properly analyze coverage via hastily-drafted denial letters that misrepresented their policies' terms and intentionally refrained from disclosing or discussing coverage under other, applicable policies.  When Mr. Weinstein attempted to engage the insurers regarding their errors, they sued for non-coverage, rather than explain their shenanigans.  In this and other ways, the Chubb Insurers have acted without proper cause, and have taken positions and implemented tactics which no reasonable carrier, under the given facts, would be expected to engage in.

123.    As a direct and proximate result of the Chubb Insurers' misconduct, Mr. Weinstein has suffered consequential damages above and beyond the mere denial of insurance benefits by the Chubb Insurers.  Among other things, Mr. Weinstein has been required to reorder his finances to ensure the funding of defense counsel for claims wrongfully denied.  He has also been forced to hire coverage counsel and other experts to preserve and respond to the Chubb Insurers' baseless claims. Damages for these and other amounts will be proven at the trial of this Counterclaim.

**WHEREFORE,** Mr. Weinstein prays for relief as follows:

1.    That Plaintiffs take nothing by way of their Complaint;

2.    That judgment be entered in favor of Defendant Weinstein and against Plaintiffs;

3.    That Plaintiffs' Complaint be dismissed with prejudice;

4.    For compensatory damages in an amount to be proven at trial;

5.    For his costs of suit incurred herein;

6.    For pre-judgment and post-judgment interest at the maximum legal rate on all sums awarded; and

7.    For such other and further relief as the Court may deem just and proper.

Dated:  May 17, 2018               Respectfully submitted,

By:  /s/ Michael Bruce Abelson
Michael Bruce Abelson
**ABELSON HERRON HALPERN LLP**
Michael Bruce Abelson (Pro Hac Vice)
Leslie A. Pereira (Pro Hac Vice)
333 South Grand Avenue, Suite 1550
Los Angeles, California  90071-1559
Tel: (213) 402-1900
Email: mabelson@abelsonherron.com
Email: lpereira@abelsonherron.com

**MORRISON COHEN LLP**
Mary E. Flynn
909 Third Avenue, 27th Floor
New York, New York  10022-4784
Tel:  (212) 735-8631
Email: mflynn@morrisoncohen.com

*Attorneys for Defendant, Counterclaimant and*
*Third-Party Plaintiff Harvey Weinstein*

## JURY TRIAL DEMAND

Defendant and Counterclaimant Harvey Weinstein herewith demands a trial by jury of all claims set forth in Plaintiffs' Complaint and his accompanying Counterclaim.

Dated:  May 17, 2018                    Respectfully submitted,


By:  /s/ Michael Bruce Abelson
Michael Bruce Abelson
**ABELSON HERRON HALPERN LLP**
Michael Bruce Abelson (Pro Hac Vice)
Leslie A. Pereira (Pro Hac Vice)
333 South Grand Avenue, Suite 1550
Los Angeles, California  90071-1559
Tel: (213) 402-1900
Email: mabelson@abelsonherron.com
Email: lpereira@abelsonherron.com

**MORRISON COHEN LLP**
Mary E. Flynn
909 Third Avenue, 27th Floor
New York, New York  10022-4784
Tel: (212) 735-8631
Email: mflynn@morrisoncohen.com

*Attorneys for Defendant, Counterclaimant and*
*Third-Party Plaintiff Harvey Weinstein*

## ATTACHMENT A

## CHUBB'S POLICIES[6]

|  | POLICY NO. | TYPE/ LIMITS | EFFECTIVE DATES |
|---|---|---|---|
| **PERSONAL LIABILITY POLICIES ISSUED TO MR. WEINSTEIN AND HIS FAMILY** | | | |
| Exhibit No. | | | |
| 1 | 11248462-05 | Excess Liability/ $10MM | 1/20/99-1/20/06 |
| 2 | 7951-14-77 DTW | Excess Liability/ $5MM | 1/21/00-1/21/06 |
| 3 | 10067521-05 | Personal Liability/ $1MM | 1/23/04-1/23/06 |
| 4 | 10067521-08 | Excess Liability/ $2MM | 2/10/04-6/17/05 |
| 5 | 12771390-01 | Personal Liability/ $10MM | 7/29/04-12/7/07 |
| 6 | 10067521-06 | Personal Liability/ $1MM | 1/23/04-1/23/06 |
| 7 | 12771390-04 | Excess Liability/ $20MM | 1/21/06-1/21/09 |
| 8 | 13042424-01 | Personal Liability/ $3/$5MM | 3/6/06-3/6/09 |
| 9 | 12771390-07 | Excess Liability/ $50mm | 11/28/07-12/28/07 |
| 10 | 12771390-08 | Excess Liability/ $20mm | 12/28/07-12/28/17 |
| 11 | 13550152-01 | Personal Liability/ $5MM | 12/14/09-12/14/18 |
| 12 | 12771390-11 | Personal Liability/ $1MM | 4/30/14-12/4/17 |
| 13 | 11248462-02 | Personal Liability/ $300,000 | 11/15/94-11/15/05 |
| 14 | 12771390-02 | Personal Liability/ $300,000 | 8/8/05-12/4/17 |

---

[6] This list is based on available information and policies provided by Chubb through May 2, 2018.  Chubb recently informed Mr. Weinstein's counsel that it was aware of *additional* insurance policies that may provide Mr. Weinstein with liability insurance, and that it will provide them in the near future.  Accordingly, this list may be updated as circumstances warrant.

| | POLICY NO. | TYPE/ LIMITS | EFFECTIVE DATES |
|---|---|---|---|
| 15 | 12771390-05 | Personal Liability/ $1MM | 10/3/07-12/4/17 |
| 16 | 14307054-01 | Personal Liability/ $1MM | 12/5/14-12/4/17 |
| 17 | 14307054-02 | Personal Liability/ $1MM | 3/31/15-12/4/17 |
| 18 | 14451500-01 | Personal Liability/ $1MM | 11/10/15-12/4/17 |
| 19 | 14019063-02 | Personal Liability/ $1MM | 7/23/13-7/23/16 |
| **GENERAL LIABILITY POLICIES ISSUED TO THE WEINSTEIN COMPANY** | | | |
| 20 | 7996-73-58 | General Liability/ $2MM | 4/7/16-4/7/17 |
| 21 | 7996-73-60 | Umbrella Liability/ $15MM plus $300,000 (Crisis Assistance) | 4/7/16-4/7/17 |
| 22 | 7996-73-58 | General Liability/ $2MM | 4/7/17-4/7/18 |
| 23 | 7996-73-60 | Umbrella Liability/ $15MM plus $300,000 (Crisis Assistance) | 4/7/17-4/7/18 |