**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, et al. | 1:18-cv-02526-PAC (RWLx) |
| Plaintiffs, | |
| -against- | |
| HARVEY WEINSTEIN, | **DEFENDANT HARVEY WEINSTEIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendant. | ***(ORAL ARGUMENT REQUESTED)*** |
| HARVEY WEINSTEIN, | |
| Counterclaimant, | |
| -against- | |
| FEDERAL INSURANCE COMPANY, CHUBB INDEMNITY INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, PACIFIC INDEMNITY INSURANCE COMPANY, and GREAT NORTHERN INSURANCE COMPANY, | |
| Counter-Defendants. | |
| HARVEY WEINSTEIN, | |
| Third-Party Plaintiff, | |
| -against- | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al. | |
| Third-Party Defendants. | |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     CONNECTICUT LAW APPLIES TO ISSUES OF COVERAGE UNDER
        WEINSTEIN'S PERSONAL LIABILITY POLICIES .......................................................2

III.    THE CHUBB PERSONAL LIABILITY POLICIES PROVIDE COVERAGE
        AGAINST CLAIMS ALLEGING  INJURIES BASED ON INTENTIONAL
        CONDUCT, INCLUDING THE CONDUCT AT ISSUE IN THE UNDERLYING
        ACTIONS .............................................................................................................6

IV.     CHUBB'S MSJ MUST BE DENIED ................................................................. 9

        A.     Standards Applicable to Duty to Defend Analysis ..................................9

        B.     The Exclusions Upon Which Chubb Seeks Summary Judgment of Its Duty
               to Defend Do Not Apply to Its Defense Obligation ..............................10

        C.     Chubb's Obligation to Defend the Underlying Lawsuits Is Not Barred by
               the Intentional Acts Exclusion ..............................................................12

        D.     Chubb's Obligation to Defend the Underlying Lawsuits Is Not Barred by
               Public Policy .........................................................................................15

        E.     Chubb's Obligation to Defend the Underlying Lawsuits Is Not Barred by
               the Business Pursuits Exclusion ............................................................17

        F.     Chubb's Obligation to Defend the Underlying Lawsuits Is Not Barred by
               the Director's Liability Exclusion..........................................................20

        G.     Chubb's Obligation to Defend the Underlying Lawsuits Is Not Barred by
               the Discrimination Exclusion.................................................................21

V.      CONCLUSION.............................................................................................. 24

# TABLE OF AUTHORITIES

**Federal Cases**

*Am. Guar. & Liab. Ins. Co. v. 1906 Co.*,
  273 F.3d 605 (5th Cir. 2001) ...................................................................................... 8

*Atl. Cas. Ins. Co. v. GTL, Inc.*,
  915 F. Supp. 2d 1169 (D. Mont. 2013)........................................................................ 8

*Cardinal v. Long Island Power Authority*,
  309 F. Supp. 2d 376 (E.D.N.Y. 2004) ...................................................................... 17

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*,
  822 F. 3d 620 (2d. Cir. 2016) ............................................................................... 4, 5

*Harris v. Provident Life & Accident Ins. Co.*,
  310 F.3d 73 (2d Cir. 2002) ......................................................................................... 5

*In re Margulies*,
  476 B.R. 393 (Bankr. S.D.N.Y. 2013)....................................................................... 16

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941).................................................................................................... 4

*Lefrak Org. v. Chubb Custom Ins. Co.*,
  942 F. Supp. 949 (S.D.N.Y. 1996) ........................................................................... 12

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
  170 F. Supp. 3d 634 (S.D.N.Y. 2016) ......................................................................... 5

*McDonell v. OneBeacon American Insurance Co.*,
  2013 WL 6181867 (W.D.N.Y. Nov. 25, 2013) ......................................................... 19

*Middlesex Ins. Co. v. Mara*,
  699 F. Supp. 2d 439 (D. Conn. 2010)........................................................................ 14

*Swan Consultants Ins. v. Travelers Property Casualty Co.*,
  360 F. Supp. 2d 582 (S.D.N.Y. 2005) ....................................................................... 19

*Zainc v. City of Waterbury*,
  603 F. Supp. 2d 368 (D. Conn. 2009)......................................................................... 8

**State Cases**

*Auten v. Auten*,
  124 N.E.2d 99 (N.Y. 1954)......................................................................................... 4

*Berardino v. Hartford Underwriters Ins. Co.*,
   2012 Conn. Super. LEXIS 799 (Conn. Super. Ct. (March 23, 2012) ...................................... 18

*Bluell Indus. v. Greater N.Y. Mut. Ins. Co.*,
   791 A.2d 489 (Conn. 2002) .................................................................................................... 7

*Board of Educ. v. Continental Insurance Co.*,
   604 N.Y.S.2d 399 (App. Div. 1993) ...................................................................................... 15

*Capstone Bldg. Corp. v. Am, Motorists Ins. Co.*,
   67 A.3d 961 (Conn. 2013) ..................................................................................................... 10

*Connecticut Ins. Guar. Ass'n v. Drown*,
   101 A.3d 200 (Conn. 2014) ............................................................................................. 10, 23

*Conway v. Travelers Cas. & Sur. Co. of Am.*,
   2000 Conn. Super. LEXIS 3480 (Conn. Super. Ct. Dec. 15, 2000) ................................ passim

*Fadden v. Cambridge Mut. Fire Ins. Co.*,
   274 N.Y.S.2d 235 (App. Div. 1966) ...................................................................................... 20

*Imperial Cas. & Indem. Co. v. State*,
   714. A.2d 1230 (Conn. 1998) ......................................................................................... passim

*Kantrow v. Security Mutual Insurance Co.*,
   845 N.Y.S.2d 738 (App. Div. 2008) ...................................................................................... 15

*Madera v. Hartford Hous. Auth.*,
   2010 Conn. Super. LEXIS 2245 (Conn. Super. Ct. Sept. 8, 2010).......................................... 9

*Mallamaci v. City of Waterbury*,
   2010 Conn. Super. LEXIS 660 (Conn. Super. Ct. March 25, 2010) ...................................... 22

*Matter of Ancillary Receivership of Reliance Ins. Co.*,
   863 N.Y.S.2d 415 (App. Div. 2008) ........................................................................................ 8

*Nationwide Mut. Ins. Co. v. Pasiak*,
   173 A.3d 888 (Conn. 2017) ............................................................................................ passim

*New London County Mut. Ins. Co. v. Zachem*,
   74 A.3d 525 (Conn. App. Ct. 2015)......................................................................................... 8

*New London Cty. Mut. Ins. Co. v. Buckley*,
   2010 Conn. Super. LEXIS 257 (Conn. Super. Ct. Jan. 26, 2010) .................................... 14, 18

*Pistolesi v Nationwide Mut. Fire Ins. Co.*,
   644 N.Y.S.2d 819 (App. Div. 1996).................................................................................. 5, 15

*QBE Ins. Corp. v. Jinx-Proof Inc.*,
   959 N.Y.S.2d 19 (App. Div. 2013) ................................................................ 5, 16

*R.T. Vanderbilt Co. v. Hartford Acc. & Indemn. Co.*,
   171 Conn. App. 61 (2017) ........................................................................ 11, 13

*State Farm Fire & Cas. Co. v. Tully*,
   142 A.3d 1079 (Conn. 2016) .................................................................. passim

*United Food Serv., Inc. v. Fidelity & Casualty Co.*,
   594 N.Y.S.2d 887 (1993) ................................................................................ 11

*United Servs. Auto. Ass'n v. Marburg*,
   698 A.2d 914 (Conn. App. Ct. 1997) .............................................................. 15

*Vermont Mut. Ins. Co. v. Walukiewicz*,
   966 A.2d 672 (Conn. 2009) ........................................................................... 10

### Federal Rules
Federal Rule of Civil Procedure 56(d) ..................................................................... 2

### Other Authorities
http://www.dictionary.com/browse/offense ............................................................. 8

## I.        INTRODUCTION

Chubb's Motion for Partial Summary Judgment ("MSJ") should be denied.  It is brought exclusively on the basis of four policy exclusions and New York law.  As discussed below, New York law does not apply to this action which was brought by a collection of out-of-state insurers to terminate the rights of a Connecticut resident under his homeowners' insurance policies. Controlling choice of law principles dictate application of Connecticut law which, as applied, demonstrates that Chubb cannot satisfy its burden of establishing its four policy exclusions encompass all of the allegations in the Underlying Lawsuits.  This is so because:

(1)   The Intentional Acts exclusion has been found ambiguous under Connecticut law when it appears, as it does here, in a policy that affirmatively provides coverage for intentional acts.  Thus, it will be interpreted against Chubb and in favor of coverage.

(2)   The Business Pursuits exclusion only applies when the complaint against the insured alleges that the insured acted with a profit motive.  Here, no such allegations can be found.

(3)   Chubb's (mis)use of the Director's Liability exclusion is undercut by the fact that Weinstein's corporate capacity at the time of the alleged misdeeds is, ultimately, a factual question that cannot be resolved on summary judgment.  Indeed, Chubb itself has previously argued that all of the conduct at issue here was done for Weinstein's "personal" gratification and, in so doing, Chubb actually highlights this disputed issue.

(4)   The Discrimination exclusion is inapplicable for several reasons, including the fact that some versions of the policies' exclusion lack the essential "sexual harassment" language relied on by Chubb.  Furthermore, the versions that do contain the language relied upon are ambiguous when read in the context of the policies' other provisions.

For all of these reasons and those set forth more fully below, Chubb's MSJ is premature and without merit. To the extent the Court disagrees, Weinstein re-asserts his prior request, timely made pursuant to FRCP 56(d), to seek and secure discovery designed to elucidate choice of law issues, as well as issues touching upon the subject exclusions' interpretation and application. *See* ECF Dkt. # 95-96.

## II. CONNECTICUT LAW APPLIES TO ISSUES OF COVERAGE UNDER WEINSTEIN'S PERSONAL LIABILITY POLICIES

Chubb wrongly asserts that New York law applies to this coverage dispute. MSJ at p. 6. It doesn't. Without a doubt, Connecticut law must be applied to issues of insurance coverage raised exclusively under Weinstein's personal liability and homeowners' policies.[1]

By advocating for New York law, Chubb misrepresents the material facts at issue in this dispute. Contrary to its MSJ, it is <u>not</u> correct that "the policies were issued to a New York insured at a New York address, through the assistance of a New York agent, largely by a New York insurance company, using forms designated as 'New York,' and basically insuring Weinstein's designated property in New York." MSJ at p. 7. In reality, many of Chubb's policies have no substantive connection to New York whatsoever.[2]

Policy No. 11248462-02 (hereinafter, the "Connecticut Policy"), for example, one of the very first Chubb policies procured by Weinstein, and one which insured him for 11 consecutive years, has no connection to New York at all. *See* Weinstein's Counterstatement of Additional Material Facts ("CAMF"), filed concurrently herewith, #113-116. Weinstein, a Connecticut resident, purchased this policy to protect himself personally, and to provide property coverage

---

[1] While New York law might apply to the interpretation of *corporate* policies issued to The Weinstein Company, which has offices in New York and conducted business there, those corporate policies are not at issue in Chubb's MSJ. At issue here are Mr. Weinstein's *homeowners'* policies.

[2] A chart summarizing the relevant contacts of the Chubb policies for choice of law purposes is attached as Exhibit 1 to the Declaration of Leslie A. Pereira (hereinafter, "Pereira Decl."), filed concurrently herewith.

2

for his Connecticut home.  CAMF ##112-113  The face of the policy shows that an Indiana insurer (Federal Insurance Company) issued the Connecticut Policy, and the broker used by Weinstein to purchase his policy was located in New Jersey.  CAMF #114-115.  Based on Weinstein's residence and the location of his properties, the policy was issued on Connecticut forms, designed to comply with Connecticut law.[3]  CAMF #116.  Given this, it is improper for Chubb to state (much less suggest) that either Weinstein or Chubb expected or intended that New York law would – or should – be applied in a coverage dispute involving the Connecticut Policy. There is no relevant New York connection to that policy or to the parties' relationship at the time the coverage contracted was entered into.

As to four of the other Chubb policies, Policy No. 14307054-01, Policy No. 14307054-02, Policy No. 14451500-01, and Policy No. 14019063-02 (hereinafter, the "California Policies"), their *only* connection to New York appears to be the fact that Weinstein, for convenience, had the policies mailed to his business manager (in New York), rather than to his home (in Connecticut).  CAMF #123.  Yet even these policies were purchased to provide personal liability coverage to Weinstein (a Connecticut resident) and to his daughter, and to insure Weinstein's California properties.  CAMF #124.  An Indiana insurance company issued the coverage, and it is provided on California forms and designed to comply with California law. CAMF ##125-126.  Again, there is simply no reason that the contracting parties would have contemplated that New York law would be applied to a coverage dispute arising under the California Policies, and doing so would be run contrary to the parties' reasonable expectations.

---

[3] Policy No. 12771390-02 is also written on Connecticut forms, including its "Family Protection Coverage," which demonstrates that Chubb was aware that Weinstein's family – and domicile – were in Connecticut at the time of contracting.  CAMF #122.

As to the remaining policies, they provide personal liability coverage to Weinstein (a Connecticut resident), and insure multiple properties in different states and countries, including New York. *See* Ex. 1 to Pereira Decl.; CAMF #127. But, far and away, the majority of the coverage is issued for persons and properties located within his home state of Connecticut, and those outside New York state. *Id*. ***Critically, <u>all</u> Chubb policies contain an express provision requiring that the policy be interpreted in all respects to conform "with the laws of the state you live in."*** CAMF #128.

Why Chubb wants New York substantive law applied to all of its policies is obvious: It raced to a New York court to prematurely bring its action, hoping a New York court would mechanistically apply (what Chubb believes is favorable) New York law. Yet to do so would be improper. This is so because New York's choice of law rules[4] direct courts to apply the law of the jurisdiction "which has the most significant contacts with the matter in dispute." *Auten v. Auten*, 124 N.E.2d 99, 101-02 (N.Y. 1954). Where, as here, the insured risk is scattered throughout multiple states, the Second Circuit notes that "New York Appellate Divisions have repeatedly recognized that" the law of the state of the **insured's domicile** should be applied, because it "should be regarded as a proxy for the principal location of the insured risk." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 822 F. 3d 620, 642 (2d. Cir. 2016) (emphasis supplied). In doing so, the Second Circuit rejected the insurer's argument that "the district court erred in treating the insured's domicile as dispositive of the choice of law analysis." *Id*. at 644. Instead, New York's state and federal courts reason that the insured's domicile is the determinative factor because "it is a fact known to the parties at the time of contracting, and

---

[4] Federal courts sitting in diversity cases must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

application of the law of that state is most likely to conform to their expectations." *Id.* at 642; *see also Liberty Mut. Ins. Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634, 642 (S.D.N.Y. 2016) (the insured's domicile is "the controlling factor in the analysis").

Here, Weinstein's domicile is Connecticut. CAMF #112. That is true both now and then. For diversity purposes here, Weinstein is being considered a Connecticut citizen. ECF Dkt. #81 [Chubb FAC] at ¶14 and #99 [Weinstein Counterclaim] at ¶17. And throughout the relevant time period, Connecticut has been the location of his principal residence, and the property that first caused him to initiate his 24-year relationship with Chubb. CAMF #112-113. Although Weinstein later acquired (and insured through Chubb) additional properties – in Connecticut, New York, California, Massachusetts, France, and England – his Connecticut residence was consistently included on his insurance policies, along with later-acquired properties. CAMF #112. Given this, Chubb cannot reasonably contend it was unaware at the time of contracting that Mr. Weinstein was a Connecticut resident.

That said, a choice of law determination is only needed where there is a conflict in the relevant law of the jurisdictions invoked by the parties. *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) (citing *Allstate Ins. Co. v. Stolarz*, 613 N.E.2d 936, 937 (N.Y. 1993)). Such is the case here. As discussed below, Connecticut and New York apply different rules with respect to policy interpretation, the exclusions at issue in this motion,[5] as well as public policy considerations.[6] These (dispositive) differences, together with Weinstein's

---

[5] For example, New York courts have held that intent to injure for purposes of an "intentional acts" exclusion can be presumed in sexual abuse cases (*Pistolesi v Nationwide Mut. Fire Ins. Co.*, 644 N.Y.S.2d 819, 821 (App. Div. 1996)), whereas Connecticut courts have found that such a presumption is limited to cases involving minors, and is rebuttable. *State Farm Fire & Cas. Co. v. Tully*, 142 A.3d 1079, 1089 (Conn. 2016).

[6] New York courts have held that public policy can provide a basis for allowing insurers to avoid coverage for claims alleging sexual assault in some circumstances (*QBE Ins. Corp. v. Jinx-Proof Inc.*, 959 N.Y.S.2d 19, 24 (App. Div. 2013)), whereas Connecticut courts have held that the public policy of Connecticut does not permit insurers to

status as a Connecticut resident, require this court to apply Connecticut law to all issues touching

upon the personal liability coverage found in Weinstein's homeowners' policies.

III.    **THE CHUBB PERSONAL LIABILITY POLICIES PROVIDE COVERAGE
AGAINST CLAIMS ALLEGING  INJURIES BASED ON INTENTIONAL
CONDUCT, INCLUDING THE CONDUCT AT ISSUE IN THE UNDERLYING
ACTIONS**

Missing from Chubb's MSJ are the terms of the policies' *insuring agreements*.  While

Chubb's MSJ is brought exclusively on the basis of asserted policy exclusions, those exclusions

cannot be interpreted in a vacuum; they must be read in the context of the policy as a whole.

*Imperial Cas. & Indem. Co. v. State*, 714. A.2d 1230, 1236 (Conn. 1998) ("It is axiomatic that a

contract of insurance must be viewed in its entirety").  In the Connecticut Policy – like all of

Chubb's policies – the insurer agrees to provide coverage as follows:

> "We cover damages a covered person is legally obligated to pay for
> personal injury … which take place anytime during the policy period and
> are caused by an occurrence, unless stated otherwise or an exclusion
> applies."[7]

The policy defines the term "personal injury" as follows:

"'Personal injury' means the following injuries, and resulting death:

- bodily injury;
- shock, mental anguish, or mental injury;
- false arrest, false imprisonment, or wrongful detention;
- wrongful entry or eviction;
- malicious prosecution or humiliation;
- libel, slander, defamation of character, or invasion of privacy."

---

renege on their contractual coverage obligations, even when an insured is alleged to have committed intentional
conduct.  *Nationwide Mut. Ins. Co. v. Pasiak*, 173 A.3d 888, 907-08 (Conn. 2017).

[7] CAMF #117.  The insuring agreement in each of the Chubb policies is substantively the same.  CAMF #118.

While the term "occurrence" is not defined in the Connecticut Policy's "Personal Liability Coverage," it is defined in most of the other Chubb policies to mean "an accident <u>or</u> offense," with the term "offense" left undefined.  CAMF #120.

Notably, the term personal injury is expressly defined to mean various "injuries" as opposed to "causes of action."  CAMF #121.  This means that the <u>injuries</u> alleged are determinative of coverage, rather than the label put on a cause of action.  Thus, there is broad coverage for any alleged "bodily injury," "shock, mental anguish, or mental injury," "false imprisonment, or wrongful detention," "humiliation," "defamation," or "invasion of privacy" if the alleged injury was "caused by" an "offense."  Thus, through their insuring agreements, the Chubb policies provide broad coverage for claims alleging injuries resulting from intentional conduct – including sexual conduct – unless there is a policy exclusion that bars such coverage.[8] *Conway v. Travelers Cas. & Sur. Co. of Am*., 2000 Conn. Super. LEXIS 3480, at *20-21 (Conn. Super. Ct. Dec. 15, 2000); *Imperial Cas. & Indem. Co.*, 714 A.2d at 1238.

For their part, Connecticut courts have affirmed that broad coverage is the expected norm for personal liability policies.  In *Imperial*, Connecticut's Supreme Court determined that "personal liability" provisions worded like Chubb's provide coverage for injuries resulting from intentional acts.  *Imperial Cas. & Indem. Co.*, 714 A.2d at 1238; *see also Bluell Indus. v. Greater N.Y. Mut. Ins. Co.*, 791 A.2d 489, 510-11 (Conn. 2002) ("We also conclude that the personal injury provisions were intended to reach only intentional acts by the insured.").  This was so because the policy's personal injury language, which referenced intentional torts, conflicted with the policy's definition of "occurrence," which referenced accidental conduct.  Based on this

---

[8] Notably, Chubb has not moved for summary judgment on the basis of any sexual misconduct exclusions in its policies.

policy structure, the Court found ambiguity, looked to the parties' reasonable expectations

regarding coverage, and then construed the ambiguity against the insurer as the policy's drafter.[9]

The same result was reached in *Conway*.  There, the insured argued that his personal liability

policy provided coverage for the intentional acts alleged against him (participation in sexual

relations, sexual harassment, and false imprisonment).  *Conway*, 2000 Conn. Super. LEXIS

3480, at *19-20.  The court agreed with the insured and held that it did, stating "[t]he policy may

be fairly read as providing for the defense of an insured who is sued as the result of" intentional

acts.  *Id*. at *21.

Here, the Underlying Lawsuits allege injuries that fall within the scope of the Chubb

policies' insuring agreements:  They allege "personal injury" caused by an "offense."  CAMF

#131.  For example, claimants in the *Geiss* Action allege the following:

- 2008 Thomas Incident:  Claimant  alleges that she suffered mental anguish or mental injury (Complaint, ¶¶ 112, 285) caused by Mr. Weinstein allegedly interviewing her for a nanny job in his boxer shorts and t-shirt, and giving her an uncomfortable hug at the end of the interview (*i.e.*, an "offense").

- 2008 Geiss Incident:  Claimant alleges that she suffered "fear, helplessness, anger, and depression" for which she sought "professional help" (*i.e.*, "mental injury") caused by Mr. Weinstein's alleged grabbing of her arm (and "continuing to hold on to her arm") (Complaint, ¶¶ 100-01) as he insisted she watch him masturbate (*i.e.*, an "offense").  Such conduct is also tantamount to false imprisonment.  *See Zainc v. City of Waterbury*, 603 F. Supp. 2d 368, 386 (D. Conn. 2009) ("In Connecticut, [f]alse imprisonment … is the unlawful restraint by one person of the physical liberty of another.").

---

[9] Notably, the bulk of the Chubb policies do **not** raise this ambiguity. Instead, while the personal injury language in the Chubb policies references intentional conduct, the policies' occurrence definition is *more advantageous* to Weinstein because it is not limited to accidental conduct and also covers injuries caused by "offenses," which encompasses intentional conduct. Given that the term "offense" is not defined in the Chubb policies, it is to be interpreted in its ordinary sense, and broadly in favor of coverage.  *Matter of Ancillary Receivership of Reliance Ins. Co.*, 863 N.Y.S.2d 415, 423 (App. Div. 2008); *New London County Mut. Ins. Co. v. Zachem*, 74 A.3d 525, 529-30 (Conn. App. Ct. 2015). In this regard, the ordinary definition of the term "offense" is "a violation or breaking of a social or moral rule; transgression; sin" or "a transgression of the law; misdemeanor."  *See* http://www.dictionary.com/browse/offense; *see also Atl. Cas. Ins. Co. v. GTL, Inc.*, 915 F. Supp. 2d 1169, 1175 (D. Mont. 2013) ("[A] reasonable person in the position of an insured could not help but understand the term 'offense' to mean a breach of moral or social conduct."); *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 617 (5th Cir. 2001) ("The ordinary meaning of 'offense' is 'a breach of a moral or social code' or 'an infraction of law.'").

- <u>Klatt Incident</u>:  Claimant alleges that she suffered "distress and emotional harm" (Complaint, ¶ 277) as a result of Mr. Weinstein allegedly locking her in a dark stairwell (Complaint, ¶ 119).  This conduct, too, makes out a claim for false imprisonment.

- <u>2017 Kendall Incident</u>:  Claimant alleges that she suffered emotional distress and fear (*i.e.*, "personal injury"), caused by Weinstein's targeting her for surveillance and investigation (Complaint, ¶ 70).  This "offense" (as that policy term will be understood) supports a claim for invasion of privacy.  *See Madera v. Hartford Hous. Auth.*, 2010 Conn. Super. LEXIS 2245, at *12 (Conn. Super. Ct. Sept. 8, 2010) ("[O]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other.").

     CAMF #131.

     Given these allegations, and others, it cannot be disputed that Weinstein has been sued in the Underlying Lawsuits for damages arising out of "personal injury" caused by an "offense." Indeed, Chubb does not even try to dispute this.  Nor does it dispute that where, as here, claimants' allegations make out a "personal liability" offense that its policies obligate the insurer to extend a defense. Given that Chubb policies extend defense coverage, in the first instance, to even intentional acts alleged in the Underlying Lawsuits, the only issue for adjudication here is whether a particular exclusion properly applies to bar coverage entirely for the multitude of allegations asserted against Mr. Weinstein.

## IV.    CHUBB'S MSJ MUST BE DENIED

### A.    *Standards Applicable to Duty to Defend Analysis*

     For summary judgment purposes, an insurer's duty to defend is determined by comparing the allegations of the complaint to the terms of the insurance policy.  *State Farm Fire & Cas. Co.*, 142 A.3d at 1084-85.  Here, Chubb does not contest, in any way, that allegations in the Underlying Lawsuits trigger its policies' personal liability coverage.  Rather, it argues that it has no duty to defend those Underlying Lawsuits because its defense obligation is barred by one (or more) exclusionary clauses found in its policies.  Thus, the relevant inquiry in this proceeding is

not whether coverage exists for the Underlying Lawsuits but, rather, whether such (existing) coverage is excluded.

When called upon to interpret the application of exclusionary clauses, courts recognize that "the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim." *Connecticut Ins. Guar. Ass'n v. Drown*, 101 A.3d 200, 215 (Conn. 2014); *Conway*, 2000 Conn. Super. LEXIS 3480, at *10 ("policy exclusions are strictly construed in favor of the insured"). Here, the insurer bears the burden of proving that an exclusion to coverage applies. *Capstone Bldg. Corp. v. Am, Motorists Ins. Co.*, 67 A.3d 961, 982 n. 24 (Conn. 2013). Moreover, it must demonstrate that **all** the allegations within the complaint fall completely within its unambiguous exclusion. *State Farm Fire & Cas. Co.*, 142 A.3d at 1085 (emphasis supplied).

As to ambiguity, the insured is entitled to the benefit of all doubts. When the words of an insurance contract are susceptible of two equally reasonable interpretations, "that which will sustain the claim and cover the loss must, in preference, be adopted." *Nationwide Mut. Ins. Co.*, 173 A.3d at 896. This is so because ambiguous provisions are construed against the drafter. *Imperial Cas. & Indem. Co.*, 714. A.2d at 1233. This rule of construction, favorable to the insured, extends to exclusionary clauses. *Vermont Mut. Ins. Co. v. Walukiewicz*, 966 A.2d 672, 591-92 (Conn. 2009).

## B. *The Exclusions Upon Which Chubb Seeks Summary Judgment of Its Duty to Defend Do Not Apply to Its Defense Obligation*

Chubb brings its MSJ on the ground that the following four exclusions "preclude any duty to defend Weinstein."[10]  MSJ at p. 4.

---

[10] Chubb's motion does not move on any other policy provision.

| Intentional Acts Exclusion | Business Pursuits Exclusion | Director's Liability Exclusion | Discrimination Exclusion |
|---|---|---|---|
| We do not cover any damages arising out of an act intended by any covered person to cause personal injury or property damage. | We do not cover any damages arising out of a covered person's business pursuits, investment or other for-profit activities, for the account of a covered person or others, or business property. | We do not cover any damages for any covered person's actions or failure to act as an officer or member or the board of directors of any corporation or organization. | We do not cover damages arising out of discrimination due to age, race, color, sex, creed, national origin, sexual harassment, or any other discrimination. |

As worded, these select exclusions, cannot be properly applied to bar Chubb's *defense* obligations because, by express reference to (and reliance upon) the term "damages," their exclusions' force only extends to Chubb's *indemnity* obligations.[11]

This is so because the term "damages" is defined in the Chubb policies to mean "the sum that is paid or payable to satisfy a claim settled by us or resolved by judicial procedure or by a compromise we agree to in writing."  CAMF #119.  Thus, the term "damages" does not include payment of defense costs, since such sums are not paid to claimants to resolve underlying claims. Accordingly, all four exclusions, even if held to wholly and completely encompass the allegations of the Underlying Lawsuits (something Weinstein disputes below), would only allow Chubb to avoid its *indemnity* obligation, not its duty to *defend* Weinstein.[12]  For this reason alone, Chubb's MSJ regarding its *defense* obligations should be denied.

---

[11] Chubb's policies contain different versions of these exclusions, many of which present substantive differences. However, all of the exclusions begin with the critical language "We do not cover damages . . . "  CAMF #129.

[12] Had Chubb intended to preclude defense coverage for claims arising out of these exclusions, it would have (and should have) said so, either by stating "We do not cover claims" arising out of these categories of conduct, or by stating "We do not cover damages or defense expenses" arising out of such conduct.  *R.T. Vanderbilt Co. v. Hartford Acc. & Indemn. Co.*, 171 Conn. App. 61, 269 (2017) (if insurer had intended exclusion to preclude claims by employees, it would have said so, particularly because it had referenced employees elsewhere in policy); *United Food Serv., Inc. v. Fidelity & Casualty Co.*, 594 N.Y.S.2d 887, 888 (1993) ("an insurer wishing to exclude certain coverage from its policy obligations must do so in clear and unmistakable language").  But the Chubb exclusions say neither.  They say only that they will not cover "damages," a defined term in the policies which means payments to

C.      *Chubb's Obligation to Defend the Underlying Lawsuits Is Not Barred by the Intentional Acts Exclusion*

*Even if* the Court fails to hold that the language and structure of Chubb's exclusions are limited solely to indemnity obligations, Chubb's assertion that its Intentional Acts Exclusion bars coverage for the Underlying Lawsuits is wrong.

*First*, as applied to the facts of the Underlying Lawsuits – many of which allege covered allegations of false imprisonment, defamation and invasion of privacy along with sexual misconduct – the referenced exclusion must be found to be ambiguous.  This is so because, as noted above, the Chubb policies' insuring agreement expressly provides coverage for intentional acts, including false imprisonment, defamation, and invasion of privacy.  For Chubb to assert that a separate provision in the policy (*i.e.*, its Intentional Acts Exclusion) then bars coverage for the exact same activities is the very sort of "internal inconsistency" that created a policy ambiguity in *Conway* and *Imperial Casualty & Indemnity Co.*  Therefore, the exclusion must be construed against Chubb and in favor of coverage for Weinstein.  *Conway*, 2000 Conn. Super. LEXIS 3480 at *21-22; *Imperial Cas. & Indem. Co.*, 714. A.2d at 1236.  New York law is in accord.  *Lefrak Org. v. Chubb Custom Ins. Co.*, 942 F. Supp. 949, 952-53 (S.D.N.Y. 1996) ("If an insurance company did not make an exclusion explicit at the time of contract drafting and bargaining (if there was any bargaining), it cannot benefit from that ambiguity at the time of litigation.").

Compounding its error, Chubb's MSJ relies on the policies' Intentional Acts Exclusion to bar coverage for sexual misconduct claims.  It does so despite the fact that some of the Chubb policies contain Sexual Misconduct Exclusions, while others do not.  CAMF #130.  This fact,

---

claimants, not defense costs.  Having failed to draft the exclusions to encompass its duty to defend, Chubb is cannot now re-write the terms of its exclusions.

too, creates an ambiguity in the policies.  For why – if the Intentional Acts Exclusion precludes coverage for alleged sexual misconduct – would the insurer have then added a specific exclusion for sexual misconduct?  And why would an insured reasonably expect that all of his insurance policies preclude coverage for alleged sexual misconduct when only some of them include a Sexual Misconduct Exclusion?  He wouldn't.  Basic principles of contract interpretation direct that when a specific provision governs a particular subject, that specific provision governs, and not some other (general) provision which might arguably touch on the same subject.  To hold otherwise would render the Sexual Misconduct Exclusion superfluous – a construction courts are urged to avoid when construing policy language.  *R.T. Vanderbilt Co. v. Hartford Acc. & Indem. Co.*, 156 A.3d 539, 634 (Conn. App. ct. 2017) ("It is well established, however, that the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous.").

*Second*, the Underlying Lawsuits do <u>not</u> allege, as required by the Chubb policies, that Weinstein intended to harm anyone.  Here, Chubb misleads the Court by citing only a select number of policies' *broadly worded* Intentional Acts Exclusion – a version that appears in only 4 of its 17 insurance policies.  CAMF #140.  By contrast, the majority version of the exclusion (the one which appears in 11 of Chubb's 17 insurance policies, and is much narrower in scope), is completely ignored by Chubb's MSJ.  CAMF #141.  That version of the Intentional Acts Exclusion states the following:

> We do not cover any damages arising out of an act *intended by any covered person to cause personal injury*.  An intentional act is one whose consequences could have been foreseen by a reasonable person.

(hereinafter, the "Majority Version").  CAMF #141.

The clear focus of the Majority Version is on the intention of the insured to injure or cause damage to the claimant.  Numerous Connecticut courts – including the Connecticut

Supreme Court – have held that an explicit intent to injure <u>must</u> be alleged in the underlying lawsuit or the exclusion does not apply. *State Farm Fire & Cas. Co.*, 142 A.3d at 1085; *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 449 (D. Conn. 2010). In *Tully* the Connecticut Supreme Court recently stated the following with regard to an insurer's duty to defend:

> [W]here … the policy excludes coverage for damages resulting from intentional acts, the court examines the factual allegations [of the underlying lawsuit] to decide whether <u>both</u> intentional acts and intended results are present.

*Id.* at 1085 (underscore added).

Here, Chubb's MSJ does not argue – either generally or specifically – that the Underlying Lawsuits allege that Weinstein intended to harm the claimants or that he intended to cause the damages they seek.[13] Based on this failing alone, Chubb's Intentional Acts Exclusion must be held to be inapplicable. *New London Cty. Mut. Ins. Co. v. Buckley*, 2010 Conn. Super. LEXIS 257, at *8 (Conn. Super. Ct. Jan. 26, 2010) (where complaint is silent regarding insured's state of mind, genuine issues of material fact exist with regard to intentional acts exclusion in policy as to issue of insurer's duty to defend). Rather than grapple with this dispositive aspect of its exclusions' application, Chubb instead argues (on a wholesale basis) that Weinstein's intent to harm the claimants must be *presumed* because the Underlying Lawsuits allege that he sexually assaulted or sexually harassed them. That's not right.

Like many states, Connecticut has adopted a presumption of intent to injure for purposes of the intentional acts exclusion in cases involving particularly heinous acts, like sexual

---

[13] This is hardly surprising, for most of the Underlying Lawsuits do not specifically allege that Weinstein's offensive conduct was intended to cause them injury. CAMF #119. *See e.g.*, Rehal Action (claimant alleges Weinstein made numerous offensive remarks and asked her to do tasks she found uncomfortable) (Ex. 4 to Gibbons Decl.); Noble Action (claimant alleges she submitted to Weinstein's overtures because of his "offer of a film role, and the offer to use his influence on her behalf.") (Ex. 3 to Gibbons Decl.); Huett Action (same) (Ex. 11 to Gibbons Decl.). CAMF ##132-134.

molestation of *minors*.[14]  Yet even then, the presumption of intent to injure is a rebuttable presumption.[15]  *United Servs. Auto. Ass'n v. Marburg*, 698 A.2d 914, 920 (Conn. App. Ct. 1997); *State Farm Fire & Cas. Co.*, 142 A.3d at 1089 ("Because the *Marburg* presumption of intent is rebuttable, next we turn to the question of whether the defendants have adduced evidence sufficient to raise a genuine issue of material fact as to Tully's intent.").  Thus, to the extent the insured introduces evidence that he did not have any intent to cause damage to the claimant, summary judgment on the basis on the intentional acts exclusion is not appropriate.  *Id*.

Here, even assuming a presumption of intent applies, something that seems unlikely, there is already direct evidence in the record that Weinstein denies all allegations of wrongdoing and, thus, evidence exists that he did not intend to harm anyone.[16]  *See* ECF Dkt. #85 (Brafman Decl., ¶¶ 1, 16); Ex. 20 to Pereira Decl.  For all of these reasons, Chubb's MSJ on the basis of the Intentional Acts Exclusion should be denied.

**D.**     ***Chubb's Obligation to Defend the Underlying Lawsuits Is Not Barred by Public Policy***

Chubb argues that New York public policy allows it to avoid its contractual obligations to defend Mr. Weinstein against the Underlying Lawsuits.  That's also not right for several reasons,

---

[14] Notably, Connecticut has <u>not</u> extended the rule of presumed intent to sexual assault claims by adult victims.

[15] Even if the Court wrongly applies New York law, Chubb is incorrect that intent to harm is presumed in all cases where an insured was alleged to have sexually assaulted an adult.  Chubb's only case for this proposition is *Pistolesi v Nationwide Mut. Fire Ins. Co.*, 644 N.Y.S.2d 819 (App. Div. 1996), where the victim of the assault was seemingly unconscious and "physically unable to consent at the time of the intentional acts."  *Id*. at 821.  Because of this inability to consent, *Pistolesi* leaves open the possibility that intent to cause damage will not be inferred when the insured might be able to present evidence that a sexual encounter with an adult was consensual.  As to *Board of Educ. v. Continental Insurance Co.*, 604 N.Y.S.2d 399 (App. Div. 1993), that decision pertains to the definition of "occurrence," which is not an issue in the MSJ and *Kantrow v. Security Mutual Insurance Co.*, 845 N.Y.S.2d 738 (App. Div. 2008) addressed only the issue of implied intent in a situation involving minors.

[16] As the Court may be aware, Mr. Weinstein recently filed a motion in the Criminal Action demonstrating that, with respect to one alleged victim, he was in a long-term, consensual and intimate relationship with claimant.  CAMF #144.  Thus, any presumption of intent to harm is specifically rebutted.

including the fact that Connecticut law applies here.[17]  That being so, Connecticut's Supreme

Court has previously held that "public policy" provides no basis for allowing insurers to renege

on their contractual coverage obligations under personal liability policies, particularly where, as

here, those policies provide coverage for a variety of intentional misconduct.  *Nationwide Mut.*

*Ins. Co.*, 173 A.3d at 907-08 (2017).  This is true even when the insured has been sued for

intentional acts resulting in punitive damages, because otherwise it would "allow insurers to

avoid an obligation for which they bargained and be unjustly enriched."  *Id*. at 908 ("It is not

seemly for insurance companies to collect premiums for risks which they voluntarily undertake,

and for which they actively advertise in competition with other companies, and then when a loss

arise to say 'It is against public policy for us to pay this award'").

       Here, Weinstein's policies unquestionably provide coverage for intentional misconduct.

As noted above, the Chubb policies protect Weinstein against claims alleging "personal injury"

(*i.e.*, mental injury, false imprisonment, defamation, invasion of privacy, etc.) resulting from

alleged "offenses" (*i.e.*, breach of moral or social code of conduct, etc.).  Thus, Chubb's assertion

that it should be relieved of its obligation to provide coverage for all claims against Weinstein

alleging intentional misconduct – including allegations of sexual misconduct, defamation, false

---

[17]  In truth, New York cases cited by Chubb do not contradict Connecticut authority, holding that public policy does not bar coverage for intentional misconduct when coverage for such acts is expressly provided by the policy's terms. Instead, Chubb's cited authority addresses situations where coverage for intentional conduct is sought under policies that provide coverage only for accidental conduct – a point not in contention here.  *See, e.g., QBE Ins. Corp.*, 959 N.Y.S.3d at 20 (also "assault and battery" exclusion in play); *In re Margulies*, 476 B.R. 393 (Bankr. S.D.N.Y. 2013) (court admits that it did not consider insurance policies' terms).  Similarly, the May 30, 2002 insurance decision by the Office of General Counsel merely states (in the context of insurance coverage for an organized crime figure), "Generally, intentional criminal acts are excluded from liability insurance coverage. *However, whether a particular insurance policy covers a particular fact pattern is a contract issue that must be decided by a court of law*."  Ex. 42 to Gibbons Decl.  Finally, even if this Court were to accept Chubb's argument that New York, as per decisions by its insurance regulators, does not permit "coverage" for intentional injuries, New York's apparent "public policy" rule appears designed to preclude only *indemnity* coverage.  As to the duty to defend, insurers have only been permitted to avoid that obligation when the insured has committed a felony with an intent to harm the victim.  Such circumstances are not present here where most of the Underlying Lawsuits allege a variety of misconduct, including false imprisonment, disparagement and invasion of privacy, all of which has been denied by Weinstein.  SMF #19; CAMF #131; Pereira Decl. Ex. 20.

imprisonment and invasion of privacy – despite the fact that they sold Weinstein such coverage is "unseemly" to say the least.  There is, in fact, no public policy reason why an insurer should be allowed to market and sell such coverage, and collect premiums for such coverage, and then abandon its insured when a claim within the scope of such coverage is brought against that insured.

      **E.**      ***Chubb's Obligation to Defend the Underlying Lawsuits Is Not Barred by the Business Pursuits Exclusion***

Chubb argues that defense coverage for the Underlying Lawsuits is barred by the policies' Business Pursuits Exclusion because "Weinstein's sexual misconduct [was] done in furtherance of his business as a film producer."  MSJ at p. 22.  Chubb is mistaken.  Indeed, Chubb applies the wrong legal standard, and focuses on the wrong allegations in the Underlying Lawsuits.

The key case in Connecticut for evaluating a business pursuits exclusion is *Conway v. Travelers Cas. & Sur. Co. of Am.*, 2000 Conn. Super. LEXIS 3480 (Conn. Super. Ct. Dec. 15, 2000).  There, the insured (a company manager) was accused by his secretary of sexual harassment and assault and battery based on sexual acts on overnight business trips and during work hours.  Travelers denied coverage on the basis of its policy's business pursuits exclusion. The *Conway* court disagreed with the denial, finding the business pursuits exclusion inapplicable, because the secretary's complaint did not allege that the insured's activities were tied in any way to a "profit motive."[18]  According to the court, a business pursuits exclusion does not excuse an insurer's duty to defend unless the underlying claimant alleges both that the insured's conduct was in the course of his business and that it was for a "profit motive."  *Id.* at

---

[18] New York also appears to require that the insured have a "profit motive" before the business pursuits exclusion will apply although, as discussed below, that requirement does not seem to be applied in all cases.  *See* MSJ at 21 (citing *Cardinal v. Long Island Power Authority*, 309 F. Supp. 2d 376 (E.D.N.Y. 2004)).

*27; *see also New London Cty. Mut. Ins. Co.*, 2010 Conn. Super. LEXIS 257, at *11 (court

denied the insurer's motion for summary judgment on the basis of the business pursuits

exclusion because "[n]o facts are alleged [in the underlying complaint] suggesting that there was

a profit motive behind the defendant's alleged actions.").

Connecticut courts further hold that the question of whether a profit motive exists is a

"flexible, fact-specific inquiry" and one typically not conducive to summary judgment.  *Conway*,

2000 Conn. Super. LEXIS 3480, at *24; *Berardino v. Hartford Underwriters Ins. Co.*, 2012

Conn. Super. LEXIS 799, at *14 (Conn. Super. Ct. (March 23, 2012) ("Ultimately, the

determination of whether a particular activity constitutes a business pursuit is to be made by a

flexible fact-specific inquiry."); *New London Cty. Mut. Ins. Co.*, 2010 Conn. Super. LEXIS 257,

at *11 (absent complaint's allegations of profit motive genuine issue exists re: whether DOE

allegations fall within business pursuits exclusion).

Here, of course, the Underlying Lawsuits lack allegations that Weinstein (the insured)

engaged in alleged misconduct with any type of profit motive.[19]  CAMF #135.  Rather, the

actions allege that Weinstein acted under the "guise" of helping the claimants with *their* careers,

and with a motive of his own sexual gratification.  CAMF #136.  In other words, claimants may

have had a profit motive when they engaged with Weinstein but, for his part, Weinstein's

(asserted) sexual motivations were his own.  For example, the claimant in the Dulany Action

alleges that, when she first met Weinstein, she believed "he wanted to befriend and mentor her

---

[19] Many of the Underlying Lawsuits allege the misconduct took place after business hours and at hotel rooms or private residences rather than any Miramax or TWC properties.  CAMF #138.  The fact is, the MSJ is factually incorrect when it asserts that "each of the Underlying Lawsuits alleges that Weinstein's sexual harassment or sexual assault occurred while he was working with his employees or while he was recruiting actresses for roles in TWC (or Miramax) films."  MSJ at p. 22.  For example, the Dulany Action and the Geiss Action both include claims by women who were simply socializing with Weinstein.  *Id.*  There is no allegation in those actions that claimants worked for Weinstein or were being recruited for roles.  *Id.*  The same is true with respect to the claim by Ms. Thomas, which alleges that she was subjected to unwanted sexual contact when she interviewed for a nanny job at Mr. Weinstein's Connecticut home.  *Id.*

with no strings attached." *Id*.  Thereafter, he invited her to screenings and parties and introduced her to important industry people.  CAMF #136.  Ultimately, after the claimant went to Weinstein's hotel room after a party and was allegedly sexually assaulted, she alleges that "she realized that Weinstein expected sex from her in return for entertaining her at an A-list party." *Id*.  Thus, the crux of Ms. Dulany's claim is that Weinstein was motivated by sex – not by any expectation of financial gain.  There is no allegation that Weinstein offered her work or hoped to profit financially from their relationship.  *Id*.  Similarly, in the Geiss Action, one of the claimants (Ms. Brock) alleges she was a model and attended the Cannes Film Festival because she thought it would be good for her career.  CAMF #137.  While there, she met Mr. Weinstein at a group dinner, and was thereafter taken to Weinstein's hotel room for a drink.  *Id*.  Once there, she alleges Weinstein made unwanted advances but she left with no sexual activity having occurred between them.  *Id*.  Thus, while Ms. Brock appears to have had a profit motive behind her interactions with Weinstein (*i.e.*, career advancement), her allegations plainly establish that Weinstein was motivated by sexual gratification, and nothing contrary is alleged. SMF #19.

Chubb's MSJ is based primarily on the following two New York cases:  *Swan Consultants Ins. v. Travelers Property Casualty Co.*, 360 F. Supp. 2d 582 (S.D.N.Y. 2005) and *McDonell v. OneBeacon American Insurance Co.*, 2013 WL 6181867 (W.D.N.Y. Nov. 25, 2013).  Both cases are distinguishable.  In *Swan*, the insured (a psychiatrist) tricked a female job applicant into a sexual massage in his office by insisting it was part of her on-the-job training.  In *McDonell*, the insured (a forensic consultant) was alleged to have intentionally disparaged his competitor, another forensic accountant.  Thus, in both cases, the nature of the injurious act was directly related to the insured's business.  Moreover, they erroneously ignore the second prong of the test – "profit motive" – which other New York courts (and Connecticut courts) have

determined to be a necessary factor.  *See Nationwide Mut. Ins. Co.*, 173 A.3d at 901 (in applying

the business pursuits exclusion, the controlling factor is "the nature of the particular act involved

and its relationship, or lack of relationship, to the business"); *Fadden v. Cambridge Mut. Fire*

*Ins. Co.*, 274 N.Y.S.2d 235, 241 (App. Div. 1966) ("To constitute a business pursuit, there must

be two elements: first, continuity, and, secondly, the profit motive).

    For all of these reasons, Chubb's duty to defend the Underlying Lawsuits is not

extinguished by the policies' Business Pursuits Exclusions.

    **F.**    ***Chubb's Obligation to Defend the Underlying Lawsuits Is Not Barred by the***
        ***Director's Liability Exclusion***

    Eager to be rid of Weinstein, Chubb asserts its policies' "Director's Liability Exclusion"

precludes its defense obligation for the Underlying Lawsuits, which it claims allege "that

Weinstein was an officer of a business organization (TWC or Miramax) and that his conduct was

undertaken in this role."  MSJ at 23.  That Chubb takes this position is rather remarkable

because, only four months ago, Chubb took exactly the *opposite* position when refusing to

provide coverage to Weinstein under The Weinstein Company's corporate policies.  There,

assessing defense coverage for the very same Underlying Lawsuits, Chubb rejected coverage

stating:

> Because the sexual misconduct allegations of the [Underlying Lawsuits]
> arise out of conduct undertaken by Mr. Weinstein in his personal capacity
> for his own personal gratification, rather than in his capacity as an
> executive, employee or manager of TWC, Federal must respectfully deny
> coverage for the [Underlying Lawsuits].

CAMF #146.

    Notwithstanding Chubb's gamesmanship here, the fact that the same insurers now adopt

a diametrically opposite position regarding the same allegations highlights a fundamental

problem with the use of this exclusion.  *To wit*: The issue of Weinstein's "capacity" at the time

of the alleged misdeeds is a factual question that cannot be resolved on summary judgment.  By reason of Chubb's own contradictory responses, it effectively concedes a disputed issue of fact regarding the interpretation of Weinstein's alleged misconduct and, for that reason, the exclusion here cannot be held to apply.[20]

### G.    *Chubb's Obligation to Defend the Underlying Lawsuits Is Not Barred by the Discrimination Exclusion*

Chubb's MSJ argues that its policies' Discrimination Exclusions bar defense coverage for the following six actions:  the NY AG action, Rehal, ABC, Canosa, Carroll and Judd.  MSJ at 25. Chubb's argument fails on both the facts and the law.

*First*, Chubb falsely asserts that "The Discrimination Exclusion contained in *all* of the policies provides that there is no coverage for . . . discrimination due to . . . sex [or] sexual harassment . . ."  MSJ at 24.  In truth, the Discrimination Exclusion in many of the Chubb policies does <u>not</u> include the phrase "sexual harassment" and, as its title suggests, simply addresses various forms of job discrimination based on protected status, seemingly to bar coverage for the same sorts of discriminatory conduct precluded by Title VII of the Civil Rights Act of 1964.  CAMF #142.  Therefore, application of the exclusion fails on this basis alone.

*Second*, "sexual harassment" is listed as excluded conduct in a separate exclusion, which states:

> **Molestation, misconduct or abuse.**  We do not cover any damages arising out of any actual, alleged or threatened:
>
> • sexual molestation;

---

[20] For Chubb, the other inconvenient truth is that the Underlying Lawsuits are either silent on this capacity issue (like the Ackers Action and the Noble Action), or merely allege that Weinstein was an officer of a company as a means of identifying him in the lawsuit's background allegations.  CAMF #139; s*ee* Geiss Action ("Defendant Harvey Weinstein is … a former co-chairman of Miramax"); Jane Doe Canada Action ("Weinstein was a directing mind and Co-Chairman of Miramax, LLC").  Such allegations do not bring the Underlying Lawsuits wholly within the scope of the Director's Liability Exclusion.

- sexual misconduct or harassment; or

- abuse.

(the "Sexual Misconduct Exclusion").  CAMF #145.

Notably, Chubb has not sought summary judgment on the basis of its policies' Sexual Misconduct Exclusion and cannot now claim that the Discrimination Exclusion precludes conduct that it is not intended to address.  This is so because the Sexual Misconduct Exclusion is a specific clause that addresses sexual misconduct, including sexual harassment, expressly, and therefore, it takes precedence over the more general Discrimination Exclusion.  Where, as here, the Discrimination Exclusion does not reference sexual harassment – but the Sexual Misconduct Exclusion *does* contain such language – alleged sexually harassing conduct is to be addressed by the Sexual Misconduct Exclusion and *not* the Discrimination Exclusion.  *See Mallamaci v. City of Waterbury*, 2010 Conn. Super. LEXIS 660, at *15 (Conn. Super. Ct. March 25, 2010) ("Although the provisions under the present circumstances could be read to conflict, they are not ambiguous.  Where there is a conflict between general and specific clauses, the specific clause governs and is construed as modifying the general clause.").

In addition, not only do some Discrimination Exclusions in the Chubb policies completely omit the "sexual harassment" language, others contain conflicting versions of the Discrimination Exclusion within the very same policy.  For example, Policy number 11248462-02 (for the time periods 2000-2001 and 2003-2004) includes two different version of the Discrimination Exclusion – one *with* the "sexual harassment" language and one *without*.  CAMF #143.  Even more confusing, the policy language for these time periods also includes a Sexual Misconduct Exclusion separate and apart from the Discrimination Exclusions.  CAMF #145. Clearly such conflicting language renders the policies' language ambiguous.  For it is well-established that "[w]hen construing exclusion clauses, 'the language should be construed in favor

of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim.'" *Nationwide Mut. Ins. Co.*, 173 A.3d at 896 (citing *Conn. Ins. Guar. Ass'n v. Drown*, 101 A.3d at 215); *Imperial Cas. & Indem. Co.*, 714 A.2d at 1236.

Finally, Chubb's argument for the application of its (ambiguous) exclusion is flawed because it presumes that the Discrimination Exclusion applies to allegations in the six identified complaints that are "on behalf of employees in the scope of their employment . . ." As this Court is aware, the policies that are the subject of Chubb's motion are *homeowner's* policies issued to Mr. Weinstein individually, and not policies issued to The Weinstein Company or some other entity. Therefore, application of the Discrimination Exclusion to the six complaints requires that claimants allege they were (at all times) *Weinstein's* employees. Tellingly, the Underlying Lawsuits' allegations do not support this broad assumption. Indeed, in each of the six underlying complaints, the allegation is that the claimants were employed by entities other than Mr. Weinstein, *e.g.,* The Weinstein *Company*. Specifically:

- Paragraph 1 of the NY AG complaint states that the lawsuit is "to vindicate the rights of **TWC's employees** . . ." . SMF #1.

- The Rehal complaint alleges that the claimant was employed by The Weinstein Company LLC and The Weinstein Company Holdings LLC. SMF #4.

- Similarly, the ABC Complaint alleges at Paragraph 1.1, "This claim relates to allegations that the Claimant suffered personal injury by way of physical and/or psychiatric injury as a result of sexual assaults and emotional abuse by Harvey Weinstein **whilst she was working for him and for the First and/or Second Defendants**." SMF #6.

- Paragraph 1 of the complaint filed by Alexandra Canosa alleges "Plaintiff,. . . worked for **or with** Harvey Weinstein, The Weinstein Company Holdings, LLC and The Weinstein Company, LLC in various capacities since 2010." (emphasis supplied) Therefore, it is unclear which entity was Ms. Canosa's employer during relevant time periods. SMF #5.

- The demand letter submitted by Charlotte Carroll states, "Ms. Carroll was **employed by the Weinstein Company** from June, 2012 to July, 2017." SMF #13.

- Ashley Judd's complaint makes no reference whatsoever to employment by Mr. Weinstein, or even TWC.  SMF #15.

For these reasons, Chubb's reliance on the Discrimination Exclusion to preclude defense coverage for the Underlying Lawsuits is misplaced, and Chubb's request for summary judgment on this basis should be denied.

## V.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant Weinstein respectfully requests denial of Chubb's MSJ or, in the alternative, requested discovery pursuant to FRCP 56(d) to develop relevant informative responsive to issues and arguments raised by way of Plaintiffs' MSJ.

Dated:  August 22, 2018                          Respectfully submitted,


By:  <u>/s/ Leslie A. Pereira       </u>
**ABELSON HERRON HALPERN LLP**
Michael Bruce Abelson (Pro Hac Vice)
Leslie A. Pereira (Pro Hac Vice)
333 South Grand Avenue, Suite 1550
Los Angeles, California  90071-1559
Tel: (213) 402-1900
Email: <u>mabelson@abelsonherron.com</u>
Email: <u>lpereira@abelsonherron.com</u>

**MORRISON COHEN LLP**
Mary E. Flynn
Aaron M. Schue
909 Third Avenue, 27th Floor
New York, New York  10022-4784
Tel: (212) 735-8631
Email: <u>mflynn@morrisoncohen.com</u>
Email: <u>aschue@morrisoncohen.com</u>

*Attorneys for Defendant, Counterclaimant and Third-Party Plaintiff Harvey Weinstein*